# United States Court of Appeals
## For the First Circuit

---

No. 01-1440

UNITED STATES OF AMERICA,

Appellee,

v.

ROBERT E. NASON, JR.,

Defendant, Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. George Z. Singal, U.S. District Judge]

---

Before

Selya, Circuit Judge,

Stahl, Senior Circuit Judge,

and Doumar,* Senior District Judge.

---

Joseph M. Baldacci for appellant.
F. Mark Terison, Senior Litigation Counsel, with whom Paula
D. Silsby, United States Attorney, was on brief, for appellee.

---

October 19, 2001

---

_____

*Of the Eastern District of Virginia, sitting by designation.

**SELYA, Circuit Judge.** This appeal requires us to resolve an interpretive schism that has divided the district courts. This schism involves the interplay between a state assault statute and a federal law barring misdemeanants who have committed crimes of domestic violence from possessing firearms. The crux of the controversy is whether "offensive physical contact," one of the two variants of assault featured in Maine's general-purpose assault statute, necessarily involves the use or attempted use of physical force. If so, prior convictions under that statute can qualify as predicate offenses for purposes of the federal statute prohibiting persons previously convicted of misdemeanor crimes of domestic violence from possessing firearms (18 U.S.C. § 922(g)(9)). If not, such misdemeanants — at least those whose convictions are not readily identifiable as involving more than offensive physical contact — may well escape the strictures of the federal law.

Based upon our construal and reconciliation, we conclude that Congress intended the federal law to cover all persons who have been convicted of assaulting domestic partners in circumstances similar to those delineated by both strains of the Maine statute. Accordingly, we affirm the conviction and sentence imposed in the case at hand.

**I. BACKGROUND**

On July 6, 1998, authorities in Somerset County, Maine, lodged a state criminal complaint against Robert Nason, Jr., the appellant here, alleging that he "did intentionally, knowingly, or recklessly cause bodily injury or offensive physical contact to one Beth Nason [his wife]," in violation of Maine's general-purpose assault statute, Me. Rev. Stat. Ann. tit. 17-A, § 207. Pertinently, that statute provides (as it has since 1975) that a person can be guilty of misdemeanor assault in one of two ways, namely, (1) "if he intentionally, knowingly, or recklessly causes bodily injury . . . to another," or (2) "if he intentionally, knowingly, or recklessly causes . . . offensive physical contact to another." Id. § 207(1). The appellant pled guilty to a charge that made no differentiation between these two variants. He received a three-day jail sentence.

On January 18, 2000, the appellant pawned a rifle at the Norridgewock trading post. Nearly one month later, he redeemed it. When thereafter questioned by a Maine state trooper, the appellant exhibited the rifle and admitted that he previously had pawned it. He also showed the trooper a cache consisting of five additional firearms.

In due course, a federal grand jury charged the appellant with violating 18 U.S.C. § 922(g)(9).[1] The indictment alleged in substance that the appellant, having been convicted of a misdemeanor crime of domestic violence (the Somerset County assault conviction), thereafter knowingly possessed a firearm (the rifle). The appellant pled guilty to this charge before Judge Singal, but, before the imposition of sentence, a different district judge handed down an opinion that cast doubt upon the validity of the charge. See United States v. Southers, No. 00-83, slip op. (D. Me. Jan. 3, 2001). We recount the circumstances of that case.

Southers had entered a plea of nolo contendere to a criminal complaint charging him with violating Maine's general-purpose assault statute by "intentionally, knowingly or recklessly caus[ing] bodily injury or offensive physical contact" to a domestic partner (in Southers's case, a live-in girlfriend). Federal authorities thereafter charged him with violating 18 U.S.C. § 922(g)(9). Southers moved to dismiss the

_____

[1]The statute bans any person "who has been convicted in any court of a misdemeanor crime of domestic violence [from possessing], in or affecting commerce, any firearm or ammunition," 18 U.S.C. § 922(g)(9), and provides criminal penalties for any violation. As we shall see, misdemeanor crimes of domestic violence have two essential elements: the mode of aggression and the domestic relationship between malfeasant and the victim. This appeal focuses on a specific mode of aggression.

-5-

federal indictment. Judge Hornby reasoned that the mode of aggression component of section 922(g)(9) necessitated the use or attempted use of physical force; that Southers's undifferentiated assault conviction may have involved offensive physical contact rather than bodily injury; that the section of Maine's disjunctive general-purpose assault statute covering "offensive physical contact" did not categorically presuppose the use of physical force; and that, even if the particular assault complaint lodged against Southers contained language sufficient to support a finding that physical force had been used, such force nonetheless was not a formal element of offensive physical contact under the Maine statute. These rulings collectively undermined the government's argument that all persons convicted of assaults on domestic partners under Maine's general-purpose assault statute necessarily had committed misdemeanor crimes of domestic violence within the purview of 18 U.S.C. § 922(g)(9). Accordingly, Judge Hornby dismissed the indictment.[2]

---

[2]We consolidated the government's appeal in Southers for oral argument with this appeal and several other appeals featuring identical (or nearly identical) issues of statutory interpretation. The panel anticipates that this opinion will serve as a bellwether, and that separate opinions will be issued to dispose of the other cases (including Southers).

Emboldened by the <u>Southers</u> decision, the appellant moved to withdraw his guilty plea and dismiss the federal indictment. Judge Singal declined to follow <u>Southers</u>. <u>See United States</u> v. <u>Nason</u>, No. 00-CR-37, slip op. (D. Me. Feb. 13, 2001). The judge concluded that physical force was a sine qua non of assault under both variants of Maine's general-purpose assault statute; that the statute, in all its applications, entailed physical force as a formal element; and that, therefore, all persons convicted of assaults on domestic partners under the statute necessarily had committed misdemeanor crimes of domestic violence within the purview of 18 U.S.C. § 922(g)(9).

Refined to bare essence, this appeal questions whether both forms of assault covered by Maine's disjunctive general-purpose assault statute (bodily injury and offensive physical contact) necessarily include physical force as a formal element (and, therefore, suffice to ground charges under the federal misdemeanant-in-possession statute). To resolve this question, we first erect a decisional framework (Part II). We then undertake an exegesis of the relevant state and federal statutes (Part III) and reconcile them (Part IV). Finally, we consider the appellant's vagueness claim (Part V), and then conclude (Part VI).

## II.  THE DECISIONAL FRAMEWORK

The diametrically opposite conclusions reached by respected trial judges about how best to synthesize the relevant statutes stem from a fundamental disagreement concerning the appropriate decisional framework.  One view, shared by the Southers court and the appellant, advocates an application of the categorical mode of analysis set forth in Taylor v. United States, 495 U.S. 575, 599-602 (1990).  The other view, shared by the Nason court and the government, eschews Taylor's categorical approach in favor of an examination of the formal definitions of the pertinent state and federal statutes.  Since this discord centers on Taylor's applicability to this kind of dispute, an examination of Taylor and its progeny represents a logical starting point.

In Taylor, the Supreme Court interpreted provisions of the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), a statute designed to ensure that certain "career" criminals receive enhanced sentences.  Asked to determine whether burglary was a predicate offense under the ACCA, the Taylor Court concluded that Congress had intended to promulgate a generic, contemporary definition of burglary.  495 U.S. at 598.  The Court supported its conclusion by pointing out that the ACCA's sentence-enhancement provision embodied a "categorical approach"

to the designation of predicate offenses.  Id. at 588-89.  Using this "categorical approach," the Court held that an offense was equivalent to burglary "if either its statutory definition substantially corresponds to 'generic' burglary, or the charging paper and jury instructions actually required the jury to find all the elements of generic burglary in order to convict the defendant."  Id. at 602.

We previously have considered the applicability of Taylor's categorical approach to the federal statutes at issue here.  In that case, we addressed, inter alia, the defendant's assertion that his prior conviction under a general Massachusetts assault and battery statute failed to comprise a "misdemeanor crime of domestic violence" within the meaning of 18 U.S.C. § 922(g)(9).  United States v. Meade, 175 F.3d 215, 218-21 (1st Cir. 1999).  Through an exercise in statutory construction, we resolved the defendant's argument that predicate misdemeanors underlying section 922(g)(9) violations needed to include relationship status as an element within their formal definitions.  See id. Focusing on the federal statute's plain language, we held that the mode of aggression was a sine qua non of the predicate offense's formal statutory definition, but that relationship status was not.  Id. at 219.

Importantly, in <u>Meade</u> we rejected the defendant's contention that <u>Taylor</u> required a federal court to plunge headlong into a categorical analysis whenever it was called upon to construe a statute or sentencing guideline that incorporated the concept of a predicate offense. We explained that:

> Before engaging in a categorical approach, one first must have established the formal definition of the particular predicate offense, a process that necessarily requires determining the requisite elements of the statute of conviction. The appellant's attempt to establish the formal definition of a "misdemeanor crime of domestic violence" by direct resort to a categorical approach thus puts the cart before the horse.

<u>Id.</u> at 221; <u>see</u> <u>also</u> <u>United States</u> v. <u>Shepard</u>, 231 F.3d 56, 64 n.8 (1st Cir. 2000) (stating that <u>Taylor</u>'s categorical approach does not "extend so far as to prevent courts from establishing the elements of the statute of conviction").

<u>Meade</u> clearly marks the analytical path that we must traverse. Under it, our first step is to establish the formal definitions of the relevant statutes by perusing the underlying statutory elements. Because we can dispose of the controversy at hand based solely upon these formal statutory definitions, any further inquiries, <u>Taylor</u>-based or otherwise, would be superfluous.

Even though our chosen methodology is not predicated upon the analytic model for which <u>Taylor</u> has become famous, it is implicitly supported by the <u>Taylor</u> Court's sequence of inquiries. The <u>Taylor</u> Court's first order of business was to decipher the meaning of the relevant statutory language — a process that included a detailed review of the ACCA's legislative history. 495 U.S. at 580-99. Only after it had established the requisite elements of burglary did the Court proceed to a posterior issue: identifying the appropriate framework for judicial review of prior convictions as predicate offenses for sentence-enhancement purposes. <u>Id.</u> at 599-602. In this context, <u>Taylor</u> restricted sentencing courts principally to an examination of the "statutory definitions" of prior offenses. <u>Id.</u> at 600, 602. Indeed, the Court's four separate uses of the locution "statutory definition" underscore the importance of fleshing out the legislature's definition of a crime before conducting any further analysis.

The inherent logic of this sequencing of inquiries is evident if one considers the analytical problems that would arise if they were reversed. In point of fact, engaging in any mode of analysis without first establishing a statutory definition would be like administering a Rorschach test without

any inkblots. Accordingly, our inquiry must begin with a conventional exercise in statutory construction.[3]

## III. PARSING THE STATUTES

Having erected the appropriate analytical framework, we now explore the ramifications of the federal and state statutes germane to this controversy. The task of interpreting and reconciling these statutes presents abstract legal questions engendering de novo review. See <u>Rhode Island</u> v. <u>Narragansett Indian Tribe</u>, 19 F.3d 685, 691 (1st Cir. 1994).

### A. The Federal Statutes.

The case at bar involves two interrelated federal statutes. The grand jury indicted the appellant under 18 U.S.C. § 922(g)(9), quoted <u>supra</u> note 1, and the incorporated term "misdemeanor crime of domestic violence" is defined elsewhere as:

> an offense that —
>
> (i) is a misdemeanor under Federal or State law; and

---

[3]We note that this case differs from <u>Taylor</u> in that it deals with the examination of a predicate offense (a misdemeanor crime of domestic violence) that constitutes a formal element of the charged crime, whereas <u>Taylor</u> deals with the examination of predicate offenses to determine the applicability of provisions mandating enhanced sentences. Be that as it may, we need not determine at this juncture whether it ever may be suitable to apply <u>Taylor</u>'s categorical approach to a predicate offense that constitutes an essential element of a federal criminal violation.

(ii) has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim.

18 U.S.C. § 921(a)(33)(A). Reading these statutes together, the proscriptions contained in section 922(g)(9) extend to any person who has been convicted under state law of a misdemeanor crime that (1) contains as an element the use or attempted use of physical force and (2) involves an enumerated relationship status between perpetrator and victim. We previously have held, and today reaffirm, that the use or attempted use of physical force constitutes an essential, and formal, element of a section 922(g)(9) predicate offense. See Meade, 175 F.3d at 218-21. Thus, the case at bar requires us to determine whether Congress, by codifying physical force as a formal element of such predicate offenses, intended to reach misdemeanants convicted under either branch of Maine's general-purpose assault statute.

To resolve this issue, we turn to time-honored principles of statutory construction. Where statutory interpretation is in prospect, the jumping-off point always is the text of the statute itself. United States v. James, 478

-13-

U.S. 597, 604 (1986); United States v. Charles George Trucking Co., 823 F.2d 685, 688 (1st Cir. 1987). In scrutinizing the language, we presume, absent evidence to the contrary, that Congress knew and adopted the widely accepted legal definitions of meanings associated with the specific words enshrined in the statute. Morissette v. United States, 342 U.S. 246, 263 (1952); United Techs. Corp. v. Browning-Ferris Indus., 33 F.3d 96, 99 (1st Cir. 1994). Predictably, we turn to Black's Law Dictionary to glean the most widely accepted legal meaning of "physical force."

This venerable reference work defines "physical force" as "force consisting in a physical act." Black's Law Dict. (7th ed. 1999) (cross-referencing the definition of "actual force"). The word "force" means "[p]ower, violence, or pressure directed against a person or thing." Id. The word "physical," although not separately defined in Black's, has a corporeal aspect. See American Heritage Dict. of the Eng. Language (4th ed. 2000) (defining "physical" as "of or relating to the body as distinguished from the mind or spirit"); Webster's Ninth New Collegiate Dict. (1989) (defining "physical" as "of or relating to the body"). Synthesizing the various definitions, physical force may be characterized as power, violence, or pressure directed against another person's body.

-14-

If statutory language points to a plain and unambiguous meaning, courts are bound to follow that signpost — at least as long as that revealed meaning is neither unreasonable nor absurd. Salinas v. United States, 522 U.S. 52, 57-58 (1997); Charles George Trucking, 823 F.2d at 688. In the context of section 921(a)(33)(A), the phrase "use or attempted use of physical force" falls into this category. Physical force is an elementary concept, readily understood. And from a policy perspective, proscribing gun possession by individuals convicted of misdemeanor crimes characterized by the application of physical force advances Congress's evident purpose — curbing the escalating societal problems associated with domestic violence. Meade, 175 F.3d at 217.

Since the straightforward employment of the term "physical force" in section 921(a)(33)(A) produces an entirely plausible result, we are not obligated to consult other aids to statutory construction. Salinas, 522 U.S. at 57-58; Meade, 175 F.3d at 219. We nonetheless mention two additional facts that confirm the absence of any congressional intent either to engraft a bodily injury requirement onto section 921(a)(33)(A) or otherwise to inspire a grudging construction of the words "physical force" as used in that statute.

The subsection immediately preceding 18 U.S.C. § 922(g)(9) precludes the "use, attempted use, or threatened use of physical force . . . that would reasonably be expected to cause bodily injury." 18 U.S.C. § 922(g)(8)(C)(ii). This qualifying clause limits the reach of section 922(g)(8) to a specific subset of physical force: physical force that is reasonably expected to generate physical injury. Following the "settled rule that a statute must, if possible, be construed in such fashion that every word has some operative effect," United States v. Nordic Vill., Inc., 503 U.S. 30, 36 (1992), the modifying clause in section 922(g)(8) cannot be dismissed as mere surplusage. This means that we must read the unqualified use of the term "physical force" in section 922(g)(9) as a clear signal of Congress's intent that section 922(g)(9) encompass misdemeanor crimes involving all types of physical force, regardless of whether they could reasonably be expected to cause bodily injury. After all, when Congress inserts limiting language in one section of a statute but abjures that language in another, closely related section, the usual presumption is that Congress acted deliberately and purposefully in the disparate omission. Duncan v. Walker, 121 S. Ct. 2120, 2124-25 (2001); Russello v. United States, 464 U.S. 16, 23 (1983).

The legislative history of section 922(g)(9) further suggests that Congress did not intend to import an injury requirement into section 922(g)(9). On this point, we find particularly instructive the comments of Senator Lautenberg (the statute's principal architect). Discussing section 922(g)(9) on the Senate floor shortly before its passage, Senator Lautenberg observed:

> [T]he revised language includes a new definition of the crimes for which the gun ban will be imposed. Under the original version, these were defined as crimes of violence against certain individuals, essentially family members. Some argued that the term crime of violence was too broad, and could be interpreted to include an act such as cutting up a credit card with a pair of scissors. Although this concern seemed far-fetched to me, I did agree to a new definition of covered crimes that is more precise, and probably broader.
>
> Under the final agreement, the ban applies to crimes that have, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon. This is an improvement over the earlier version, which did not explicitly include within the ban crimes involving an attempt to use force, or the threatened use of a weapon, if such an attempt or threat did not also involve actual physical violence.

142 Cong. Rec. S11,877 (1996) (statement of Sen. Lautenberg).

While the remarks of the chief sponsor of a bill by no means control a court's construal of the enacted statute, they nonetheless can provide reliable insights into its construction.

-17-

<u>N. Haven Bd. of Educ.</u> v. <u>Bell</u>, 456 U.S. 512, 526-27 (1982); <u>Meade</u>, 175 F.3d at 219. Here, the specificity of the comments, precisely directed toward the intended meaning of the statute's mode of aggression component, lends substantial credence to them. <u>See</u> <u>Regan</u> v. <u>Wald</u>, 468 U.S. 222, 237 (1984). We conclude, therefore, that Senator Lautenberg's statements, which plainly indicate that a principal purpose underlying Congress's substitution of "crimes involving the use or attempted use of physical force" for "crimes of violence" in section 922(g)(9) was to broaden the spectrum of predicate offenses covered by the statute, are worthy of respect.

In context, these insights are quite helpful. A comparison of the plain meanings of "crimes of violence" and "physical force" highlights the consonance between the purpose and effect of the revised language. "Violence" is essentially a subset of physical force involving injury or risk of harm. <u>See</u> <u>Webster's Ninth New Collegiate Dict.</u> (1989) (defining violence as the "exertion of physical force so as to injure or abuse"); <u>see</u> <u>also</u> 18 U.S.C. § 924(e)(2)(B)(ii) (defining "violent felony" to include crimes involving "conduct that presents a serious potential risk of physical injury to another"). The substitution of "physical force" as the operative mode of aggression element effectively expanded the

-18-

coverage of section 922(g)(9) to include predicate offenses whose formal statutory definitions contemplated the use of any physical force, regardless of whether that force resulted in bodily injury or risk of harm.

To summarize, the usual and customary meaning of the phrase "physical force" persuades us that Congress intended section 922(g)(9) to encompass crimes characterized by the application of _any_ physical force. The additional signposts point unerringly in the same direction. Accordingly, we use this as the operative definition.

### B. **The Maine Assault Statute**.

The grand jury denominated the appellant's prior conviction under the Maine general-purpose assault statute as the predicate offense underlying the violation of 18 U.S.C. § 922(g)(9). As previously stated, the Maine statute provides that "[a] person is guilty of assault if he intentionally, knowingly, or recklessly causes bodily injury or offensive physical contact to another." Me. Rev. Stat. Ann. tit. 17-A, § 207(1). Based upon the statute's disjunctive structure, either bodily injury or offensive physical contact constitutes a sufficient actus reus. In the pages that follow, we explore the scope of these two varieties of assault, according "respectful consideration and great weight" to the views of Maine's highest

court.  <u>Indiana ex rel. Anderson</u> v. <u>Brand</u>, 303 U.S. 95, 100 (1938).

1.  **<u>Bodily Injury</u>.**  Parsing the bodily injury variant of assault is a straightforward task.  Maine's criminal code defines bodily injury as "physical pain, physical illness or an impairment of physical condition."  Me. Rev. Stat. Ann. tit. 17-A, § 2(5).  The Supreme Judicial Court of Maine (the Law Court) has imported this definition of bodily injury into Maine's general-purpose assault statute.  <u>See</u> <u>State</u> v. <u>Griffin</u>, 459 A.2d 1086, 1091 (Me. 1983); <u>State</u> v. <u>Carmichael</u>, 405 A.2d 732, 735 (Me. 1979).  Thus, the latter statute, under the bodily injury variant, proscribes acts that cause physical pain, physical illness, or impairments of physical condition.

2.  **<u>Offensive Physical Contact</u>.**  The definition of "offensive physical contact," as used in Maine's general-purpose assault statute, is more elusive.  Maine's criminal code does not explicate the phrase.  There is, however, pertinent case law, which arises in two contexts:  lesser included offenses and jury instructions.  We examine those precedents.

In <u>State</u> v. <u>Rembert</u>, 658 A.2d 656 (Me. 1995), the defendant appealed from a robbery conviction premised upon a statute that included, as a required element, the use of

physical force.[4] The defendant maintained that it was impossible to commit robbery involving physical force without also committing criminal assault involving offensive physical contact. The state attempted to distinguish the two on the ground that robbery involving physical force did not necessarily entail any bodily contact between robber and victim, whereas assault involving offensive physical contact required a direct touching of the victim. Id. at 657-58. In rejecting the state's argument, the Law Court subscribed to the Restatement position, see Restatement (Second) of Torts § 18 cmt. c (1965), originally formulated in the context of civil battery. Accordingly, the Law Court held that offensive physical contact was not limited to direct touchings, but also could be effected by indirect touchings (e.g., the touching of items intimately connected to the body, such as clothing or a cane, customarily regarded as part and parcel of an individual's "person"). Rembert, 658 A.2d at 658. Since the use of physical force on

---

[4]The statute of conviction provided in pertinent part:

> 1. A person is guilty of robbery if he commits or attempts to commit theft and at the time of his actions:
>
>           *       *       *
> C. He uses physical force on another . . . .

Me. Rev. Stat. Ann. tit. 17-A, § 651(1)(C).

another necessarily involved some type of offensive physical contact, assault was a lesser included offense of robbery.  Id.

Contrary to the government's importuning, Rembert's conclusion that the use of physical force invariably involves some type of offensive physical contact does not definitively establish the converse proposition:  that offensive physical contact necessarily entails the use of physical force.  Rather, Rembert leaves open two possibilities:  offensive physical contacts may categorically entail the use of physical force, or, alternatively, offensive physical contacts characterized by the use of physical force may represent a subset of a broader universe of offensive physical contacts.  We shall return to, and resolve, this question in Part IV, infra.

In determining the scope of "offensive physical contact," as that term is used in Maine's general-purpose assault statute, we also derive enlightenment from State v. Pozzuoli, 693 A.2d 745 (Me. 1997).  There, the defendant was convicted on a charge of assault (an offense which, as we have explained, may consist of offensive physical contact).  The Law Court approved a jury instruction that defined offensive physical contact as:

> [K]nowingly intending bodily contact or unlawful touching done in such a manner as would reasonably be expected to violate the person or dignity of the victim.

-22-

> It's something less than bodily injury
> . . . but requires more than a mere touching
> of another.  And basically it's a question
> of was the contact under the circumstances
> such that a reasonable person would find it
> to be offensive.
> You may consider what a reasonable
> person might consider under the
> circumstances to be offensive . . . .

Id. at 747.

For present purposes, the lesson to be learned from this approved instruction is that offensive physical contact entails "something less than bodily injury . . . but requires more than a mere touching of another."  The first part of this definition reiterates the Law Court's view that the presence or absence of bodily injury distinguishes the two variants of assault contemplated under Maine's general-purpose assault statute.  See Carmichael, 405 A.2d at 735 ("We view section 207 as specifying two independent types of simple assault, one where bodily injury results and another where there is merely an offensive physical contact without resulting bodily injury.").  The second part of the definition emphasizes that not every physical contact is actionable under the general-purpose assault statute.  Two factors distinguish mere touchings from offensive physical contacts:  the mens rea requirement, Me. Rev. Stat. Ann. tit. 17-A, § 207(1), and the application of a "reasonable person" standard to determine whether a contact is offensive,

-23-

see Pozzuoli, 693 A.2d at 747-48; see also Restatement (Second) of Torts § 19 ("A bodily contact is offensive if it offends a reasonable person's sense of dignity.").

## IV.  RECONCILING THE STATUTES

The key distinction between the federal and state statutes is one of perspective:  the physical force rubric employed in the federal statutes focuses on the assailant's conduct (i.e., whether the assailant directed physical force against the victim), whereas both variants of the Maine general-purpose assault statute focus on the victim's circumstances (i.e., whether the victim endured either bodily injury or an offensive physical contact).  But the fact that the two statutory schemes examine the same act from divergent perspectives does not mean that they are irreconcilable.  The decisive question is whether both bodily injury and offensive physical contact assaults necessarily involve the use of

physical force.[5]  We conduct this inquiry separately for each type of assault.

## A.  **Bodily Injury**.

The breadth of conduct covered by the bodily injury branch of the Maine general-purpose assault statute unambiguously involves the use of physical force.  In pertinent part, the statute criminalizes the "use of unlawful force against another causing bodily injury."  Griffin, 459 A.2d at 1091.  In turn, all three types of bodily injury specified by Maine's criminal code (pain, illness, and impairment) contain the same adjectival modifier:  "physical."  Me. Rev. Stat. Ann. tit. 17-A, § 2(5).  Common sense supplies the missing piece of the puzzle:  to cause physical injury, force necessarily must be physical in nature.  Accordingly, physical force is a formal element of assault under the bodily injury branch of the Maine statute.

---

[5]At oral argument, counsel for various defendants, see supra note 2, devised a number of intricate examples in an effort to test the limits of the government's suggested answer to this query.  In performing our analysis, however, we eschew such exotic exemplars and limit our probing to actual cases that have been adjudicated by the Law Court.  This is consistent with the Law Court's steadfast refusal to rule upon hypothetical scenarios.  See, e.g., Connors v. Int'l Harvester Credit Corp., 447 A.2d 822, 824 (Me. 1982) (emphasizing that "rights must be declared upon the existing state of facts and not upon a state of facts that may or may not arise in the future").

### B. **Offensive Physical Contact.**

This leaves the question whether offensive physical contact under Maine's general-purpose assault statute necessarily involves the use of physical force. For ease in analysis, we divide this type of contact into two groupings: (1) contacts with another person's body, and (2) contacts with objects intimately connected with another person's body.

Our assessment of offensive physical contacts with another person's body follows the same lines as our assessment of bodily injury assaults. As the court below perspicaciously observed, contacts of this sort invariably emanate from the application of some quantum of physical force, that is, physical pressure exerted against a victim. Nason, slip op. at 6. Therefore, offensive physical contacts with another person's body categorically involve the use of physical force (and, hence, qualify as misdemeanor crimes of domestic violence under section 922(g)(9) if perpetrated against domestic partners).

We think that the same logic extends to offensive physical contacts with objects connected to a person. The Law Court has transplanted into the soil of Maine's general-purpose assault statute the meaning of "offensive physical contact" developed in the context of civil battery. Rembert, 658 A.2d at 658. In adopting this approach, the court stressed that:

> Unpermitted and intentional contacts with
> anything so connected with the body as to be
> customarily regarded as part of the other's
> person and therefore as partaking of its
> inviolability is actionable as an offensive
> contact with his person.  There are some
> things, such as clothing or a cane or,
> indeed, anything directly grasped by the
> hand which are so intimately connected with
> one's body as to be universally regarded as
> part of the person.

Id. (citing Restatement (Second) of Torts § 18 cmt. c).

The Rembert court concluded that contacts with objects intimately connected with another individual's body were actionable under the offensive physical contact branch of Maine's general-purpose assault statute. See id. Like physical contact with the body itself, physical contact with a physical object, such as a cane, inevitably entails the application of physical pressure.  Accordingly, we conclude that offensive physical contacts with objects intimately connected to another person's body necessarily require the application of physical force for their completion (and, hence, assaults of that genre, resulting in convictions under Maine's general-purpose assault statute, qualify as misdemeanor crimes of domestic violence under section 922(g)(9) if perpetrated against domestic partners).

The only other adjudication of a comparable claim by a federal appellate court supports this conclusion.  In United

-27-

States v. Smith, 171 F.3d 617 (8th Cir. 1999), the court of appeals pondered whether a conviction based upon Iowa's misdemeanor assault statute qualified as a predicate offense for purposes of section 922(g)(9). One prong of the statute covered "[a]ny act which is intended to cause pain or injury to, or which is intended to result in physical contact which will be insulting or offensive to another. . . ." Iowa Code § 708.1(1). The defendant complained that physical force was not a formal element of section 708.1(1), and, accordingly, that a conviction under it could not constitute a predicate offense within the purview of 18 U.S.C. § 922(g)(9). This was so, the defendant said, because the Iowa statute encompassed physical contact that was "merely" insulting or offensive. Smith, 171 F.3d at 621 n.2. The Eighth Circuit dismissed that plaint out of hand, concluding that "physical contact [that is insulting or offensive], by necessity, requires physical force to complete." Id. We agree with this conclusion.

To say more on this topic would be supererogatory. The short of it is that both variants of assault regulated under Maine's general-purpose assault statute necessarily involve the use of physical force. As a result, all convictions under that statute for assaults upon persons in the requisite relationship status qualify as misdemeanor crimes of domestic violence within

the purview of 18 U.S.C. § 922(g)(9).  To be precise, if a malfeasant convicted under Maine's general-purpose assault statute is connected with the victim through any of the domestic relationships enumerated in section 922(g)(9), then federal law bars the malfeasant from possessing firearms and subjects him to criminal penalties for violating this proscription. Consequently, the appellant, who admittedly possessed a rifle after having pleaded guilty to violating Maine's general-purpose assault statute by assaulting his wife, was lawfully convicted on the federal charge.[6]

## V.  VOID FOR VAGUENESS

As a fallback position, the appellant asseverates that section 922(g)(9) is unconstitutionally vague.  We find this asseveration unpersuasive.

A criminal statute is susceptible to a constitutional challenge on vagueness grounds if it fails adequately to specify either the conduct that it proscribes or the persons to whom it extends.  <u>City of Chicago</u> v. <u>Morales</u>, 527 U.S. 41, 56 (1999); <u>United States</u> v. <u>Lanier</u>, 520 U.S. 259, 265-66 (1997); <u>Bouie</u> v. <u>City of Columbia</u>, 378 U.S. 347, 350-51 (1964).  This court

---

[6]After resolving the matter favorable to the government, <u>Nason</u>, slip op. at 4-6, Judge Singal went the extra mile:  he assumed arguendo that the categorical approach applied and offered an alternative rationale for the conviction, <u>id.</u> at 7-8. We take no view of this alternate ground of decision.

previously has considered a vagueness challenge aimed at section 922(g)(9). See Meade, 175 F.3d at 222. In rejecting that challenge, we observed that section 922(g)(9) "contains no ambiguity either as to the persons to whom the prohibitions apply or as to what conduct is proscribed." Id. Under the law of the circuit doctrine, that holding controls. See, e.g., United States v. Wogan, 938 F.2d 1446, 1449 (1st Cir. 1991).

The appellant attempts to parry Meade's precedential thrust on the ground that the defendant there concentrated his fire on the relationship element of section 922(g)(9). Although we find this distinction lacking in force, we nonetheless pause to explain more fully why section 922(g)(9)'s mode of aggression element is insusceptible to a vagueness challenge.

Statutes are sufficiently certain when they employ words or phrases with "a well-settled common law meaning, notwithstanding an element of degree in the definition as to which estimates might differ." Connally v. General Constr. Co., 269 U.S. 385, 391 (1926). Since words, by their nature, are imprecise instruments, even laws that easily survive vagueness challenges may have gray areas at the margins. See United States v. Wurzbach, 280 U.S. 396, 399 (1930) ("Whenever the law draws a line there will be cases very near each other on opposite sides. The precise course of the line may be

-30-

uncertain, but no one can come near it without knowing that . . . if he does so it is familiar to the criminal law to make him take the risk."); <u>United States</u> v. <u>Gaudreau</u>, 860 F.2d 357, 363 n.17 (10th Cir. 1988) (similar). Both the federal and state statutes framing this dispute draw upon legal constructs (physical force, bodily injury, offensive physical contact) with rich, well-developed common law lineages. In combination, they afford fair and ample warning to persons of ordinary intelligence that a prior conviction under Maine's general-purpose assault statute, if it involves a domestic partner, likely qualifies as a misdemeanor crime of domestic violence sufficient to trigger the proscriptions of 18 U.S.C. § 922(g)(9). Consequently, we reaffirm our ruling in <u>Meade</u> that section 922(g)(9) is not unconstitutionally vague.

## VI.  CONCLUSION

We need go no further. We hold that all convictions under Maine's general-purpose assault statute, Me. Rev. Stat. Ann. tit. 17-A, § 207(1), necessarily involve, as a formal element, the use of physical force. Accordingly, any conviction predicated thereon that involves persons in the requisite relationship status qualifies as a predicate offense (i.e., a misdemeanor crime of domestic violence) sufficient to trigger the proscriptions of 18 U.S.C. § 922(g)(9). The lower court

therefore did not err in denying the appellant's motion to dismiss the indictment (and, concomitantly, refusing to vacate the appellant's guilty plea). It follows inexorably, as night follows day, that the conviction and sentence must be

**Affirmed**.