[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 17, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-12448

_____

D. C. Docket No. 03-00064-CR-3-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JERRY LEE GRIFFITH,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(July 17, 2006)**

Before BIRCH and CARNES, Circuit Judges and TRAGER[*], District Judge.

CARNES, Circuit Judge:

---

[*] The Honorable David G. Trager, United States District Judge for the Eastern District of New York, sitting by designation.

Jerry Lee Griffith was convicted for possession of a firearm in violation of 18 U.S.C. § 922(g)(9), the provision of the Armed Career Criminal Act (ACCA) that makes it a crime for anyone who has been convicted of a "misdemeanor crime of domestic violence" to possess a firearm. Griffith contends that his Georgia simple battery conviction does not qualify as a predicate offense for § 922(g)(9) purposes because its contact element does not require physical force. That was the sole basis of his motion to dismiss the indictment and is the principal basis of his appeal from the district court's order denying that motion. The underlying issue of statutory interpretation about what qualifies as "physical force" for § 922(g)(9) purposes has been decided by three other circuits, which have split two-to-one against Griffith's position. Our decision will make it three-to-one.

**I.**

In August 2000 Jerry Griffith pleaded guilty to two counts of simple battery, a misdemeanor under Ga. Code Ann. § 16-5-23(a). We know from state court records that his conviction on the first count was for making "contact of an insulting and provoking nature to Delores Griffith, his wife, by hitting her," and that his conviction on the second count was for "intentionally mak[ing] contact of an insulting and provoking nature to Delores Griffith, his wife, by dragging her across the floor."

2

Griffith admits that one night in October 2002, which was about two years after his state court conviction, he was found in possession of a firearm. That led to his conditional guilty plea to one count of violating § 922(g)(9), the condition of the plea being that Griffith could appeal the district court's denial of his motion to dismiss the indictment. The sole ground of that motion to dismiss was Griffith's contention that his prior Georgia misdemeanor conviction was not a valid predicate offense to sustain his current conviction under 18 U.S.C. § 922(g)(9).

## II.

Section 922(g)(9) makes it "unlawful for any person . . . who has been convicted in any court of a misdemeanor crime of domestic violence" to possess "any firearm or ammunition" that has been in or affects interstate commerce. 18 U.S.C. § 922(g)(9). The term "misdemeanor crime of domestic violence" is defined to include an offense that "(i) is a misdemeanor under. . . State . . . law; and (ii) has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse . . . ." 18 U.S.C. § 921(a)(33)(A). Griffith's primary contention is that the Georgia statute under which he was convicted in 2000 does not satisfy the second part of that definition— that it does not have "as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon."

3

The question is not whether the actual conduct that led to Griffin's prior conviction involved physical force or worse. If that were the question, this would be a simpler case because we know from the state court records that Griffith was convicted of making "contact of an insulting and provoking nature to Delores Griffith, his wife, by hitting her . . ." and making "contact of an insulting and provoking nature to Delores Griffith, his wife, by dragging her across the floor." Wife beating and dragging is conduct that involves physical force under any definition of that term. The § 921(a)(33)(A)(ii) definition, however, does not turn on the actual conduct underlying the conviction but on the elements of the state crime ("has, as an element . . ."). See 18 U.S.C. § 921(a)(33)(A)(ii); United States v. Shelton, 325 F.3d 553, 558 n.5 (5th Cir. 2003) (declining to consider in applying § 922(g)(9) the defendant's admission that he used physical force during the assault, because the court "look[s] to the elements set forth in the statute—not the actual conduct to determine whether the offense qualifies as a crime of domestic violence"); United States v. Smith, 171 F.3d 617, 620–21 (8th Cir. 1999) (holding that in applying § 922(g)(9) "we must look only to the predicate offense rather than to the defendant's underlying acts" and "[w]e may expand our inquiry under this categorical approach to review the charging papers and jury instructions, if applicable, only to determine under which portion of the assault statute Smith was

4

convicted"); see also Taylor v. United States, 495 U.S. 575, 600, 110 S. Ct. 2143, 2159 (1990) (in applying the 18 U.S.C. § 924(e) term "violent felony" courts may look only to the statutory definitions of the prior offense).

The Georgia simple battery statute provides: "A person commits the offense of simple battery when he or she . . . : (1) Intentionally makes physical contact of an insulting or provoking nature with the person of another . . . ." Ga. Code Ann. § 16-5-23(a)(1). Applying the categorical or element-by-element approach, the question is whether the crime defined by that statute requires "as an element, the use or attempted use of physical force." If "physical contact of an insulting or provoking nature," as described in the Georgia statute, necessarily involves "physical force," a conviction in the courts of that state for simple battery is enough to satisfy the requirements of § 922(g)(9); if not, then not.

On the government's side of the issue are the decisions of the First Circuit in United States v. Nason, 269 F.3d 10, 20–21 (1st Cir. 2001) (concluding that a state statute criminalizing "offensive physical contact" requires the use of "physical force" so that a violation of it qualifies as a crime of domestic violence for § 922(g)(9) purposes), and the Eighth Circuit in United States v. Smith, 171 F.3d 617, 621 n.2 (8th Cir. 1999) (concluding that a state statute that contains "insulting or offensive physical contact" as an element requires the use of physical force so

5

that a violation of it qualifies as a crime of domestic violence under § 922(g)(9)). On Griffith's side of the issue is the Ninth Circuit's decision in United States v. Belless, 338 F.3d 1063, 1067–68 (9th Cir. 2003) (concluding that a statute criminalizing rude, angry or insolent "unlawful touching" does not require "physical force" sufficient to satisfy § 922(g)(9)). See also Flores v. Ashcroft, 350 F.3d 666, 669–70 (7th Cir. 2003) (interpreting a similar provision of the Immigration and Naturalization Act that requires an underlying offense to have as an element the use of physical force, and concluding that intentional touching that results in bodily injury does not necessarily involve physical force).

"In interpreting a statute we look first to the plain meaning of its words." United States v. Maung, 267 F.3d 1113, 1121 (11th Cir. 2001). In this case the key words in the § 921(a)(33)(A)(ii) definition are "physical force." The plain meaning of "physical force" is "[p]ower, violence, or pressure directed against a person" "consisting in a physical act." See Black's Law Dictionary 673 (8th ed. 1999); Nason, 269 F.3d at 16. As we have noted, the Georgia statute has as an element "physical contact of an insulting or provoking nature." Ga. Code Ann. § 16-5-23(a)(1). A person cannot make physical contact—particularly of an insulting or provoking nature—with another without exerting some level of physical force. See Smith, 171 F.3d at 621 n.2 ("physical contact, by necessity,

6

requires physical force to complete"); see also Nason, 269 F.3d at 16 (holding that a statute criminalizing "offensive physical contact" satisfies § 922(g)(9)'s physical force requirement and noting that because the straightforward definition of physical force produces "an entirely plausible result," the plain language controls). Therefore, under the plain meaning rule, the "physical contact of an insulting or provoking nature" made illegal by the Georgia battery statute satisfies the "physical force" requirement of § 921(a)(33)(A)(ii), which is defined into § 921(g)(9).

The result we reach by applying the plain meaning rule is bolstered by a look at a close neighbor of the statutory provision we are interpreting. Section 922(g)(8)(C)(ii), which immediately precedes § 922(g)(9), is part of a provision restricting firearm possession by anyone subject to a court order that prohibits the "use, attempted use, or threatened use of physical force . . . that would reasonably be expected to cause bodily injury." 18 U.S.C. § 922(g)(8)(C)(ii). The significance of the limiting language narrowing the scope of that provision to force "that would reasonably be expected to cause bodily injury" is that Congress put the limitation into the last subsection that precedes § 922(g)(9), but not into § 922(g)(9) itself or into the definition of "crime of domestic violence" that is contained in § 921(a)(33)(A)(ii).

"It is well settled that where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." Duncan v. Walker, 533 U.S. 167, 173, 121 S. Ct. 2120, 2125 (2001) (internal citation, quotation marks, and alteration omitted). If Congress had wanted to limit the physical force requirement in § 922(g)(9), it could have done so, as it did in the last clause of the preceding paragraph of the same subsection, see § 922(g)(8)(C)(ii), and with the same limiting language or something similar to it, but that is not what Congress did. That it did not speaks loudly and clearly. See Nason, 269 F.3d at 16–17 (reasoning that the omission of the narrowing language from § 922(g)(9) is "a clear signal of Congress's intent" to include within the ambit of § 922(g)(9) misdemeanor crimes those "involving all types of physical force, regardless of whether they could reasonably be expected to cause bodily injury."); see generally Burlington N. & Sante Fe Ry. Co. v. White, ___ U.S. ___, ___, ___S.Ct. ___, ___, 2006 WL 1698953, at *6 (June 22, 2006) ("We normally presume that, where words differ as they differ here, 'Congress acts intentionally and purposely in the disparate inclusion or exclusion.'") (quoting Russello v. United States, 464 U.S. 16, 23, 104 S. Ct. 296, 300 (1983)); DIRECTV, Inc. v. Brown, 371 F.3d 814, 818 (11th Cir. 2004) ("As we have previously stated, 'when

8

Congress uses different language in similar sections, it intends different meanings.'") (quoting Iraola & CIA, S.A. v. Kimberly-Clark Corp., 232 F.3d 854, 859 (11th Cir.2000)).

Griffith relies heavily on the Ninth Circuit's decision in Belless and on the Seventh Circuit's decision in Flores. In Belless, the defendant was convicted under a Wyoming battery statute that criminalizes "unlawfully touch[ing] another in a rude, insolent or angry manner or intentionally, knowingly or recklessly caus[ing] bodily injury to another." See Belless, 338 F.3d at 1067 (quoting Wyo. Stat. Ann. § 6-2-501(b)). Characterizing that statute as a "law against rude touchings," the Ninth Circuit concluded that a violation of it did not qualify as a crime of violence for § 922(g)(9) purposes, because it did not have as an element the use or attempted use of physical force. Belless, 338 F.3d at 1068. The court reasoned that the physical force requirement in the ACCA cannot possibly include "any touching" in the "sense of Newtonian mechanics" and held that the physical force requirement cannot be satisfied by "de minimis" touching. Id. at 1067–68. The court pointed out that "words and phrases" that are "associated" with physical force in § 922(g)(9) include "threatened use of a deadly weapon," which is "gravely serious." Id. at 1068. Because the Wyoming statute at issue in Belless "criminalizes conduct that is minimally forcible, though ungentlemanly," the Ninth

9

Circuit concluded that the statute did not have as an element the "physical force" required under § 922(g)(9). Id. According to that court, § 922(g)(9) requires "violent use of force against the body of another." Id.

To the extent the reasoning in Belless would extend to the "physical contact" element of the Georgia statute at issue in this case, we disagree with it. The fact that Congress included in the § 921(a)(33)(A)(ii) definition language to cover statutes that have as an element "the threatened use of a deadly weapon," even when no physical force is attempted or used, does not justify the conclusion that the use of physical force alone is not enough to come within § 922(g)(9). The statutory language specifies that either "the use or attempted use of physical force, or the threatened use of a deadly weapon" is enough. Specifying that either "A or B" is enough means A alone is enough. It does not mean that A is enough only if it shares some additional characteristic with B. See S.D. Warren Co. v. Me. Bd. of Envtl. Prot., ____ U.S. ____, 126 S. Ct. 1843, 1849 (2006) ("The argument seems to assume that pairing a broad statutory term with a narrow one shrinks the broad one, but there is no such general usage . . . ."). We know from the language it included in § 922(g)(8)(C)(ii) (requiring "physical force . . . that would reasonably be expected to cause bodily injury") that Congress knew how to require more than

10

simple "physical force" if it had wanted to do so. The legislative branch does not require the help of the judicial branch for that simple drafting task.

Reaching the Belless result in this case would alter the scope of § 922(g)(9) by effectively inserting the word "violent" into the operative definition contained in § 921(a)(33)(A)(ii). That modification may be an appealing improvement in some eyes, but we are not licensed to practice statutory remodeling. See Artuz v. Bennett, 531 U.S. 4, 10, 121 S. Ct. 361, 365 (2000); Badaracco v. Comm'r of Internal Revenue, 464 U.S. 386, 398, 104 S. Ct. 756, 764 (1984); Wright v. Sec'y for Dep't of Corr., 278 F.3d 1245, 1255 (11th Cir. 2002); Harris v. Garner, 216 F.3d 970, 976 (11th Cir. 2000) (en banc).

The Ninth Circuit in Belless, after discussing Newtonian mechanics, said that "[o]ur purpose in this statutory construction exercise, though, is to assign criminal responsibility, not to do physics." 338 F.3d at 1068. We do not agree that it is the function of courts to assign criminal responsibility. That is the function of Congress. In carrying out the assignment of responsibility that Congress has decided upon, courts should be faithful to the language that it has chosen to express its will.

The Seventh Circuit's Flores decision involved an alien ordered removed under § 237(a)(2)(E) of the Immigration and Nationality Act, 8 U.S.C. §

11

1227(a)(2)(E), because he had committed a "crime of domestic violence." 350 F.3d at 668. The removal provision incorporated the 18 U.S.C. § 16 definition of "crime of violence," see id., which is "'an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another.'" Flores, 350 F.3d at 669 (quoting 18 U.S.C. § 16(a)) An Indiana battery statute provided that: "A person who knowingly or intentionally touches another person in a rude, insolent, or angry manner commits battery, a Class B misdemeanor. However, the offense is: (1) a Class A misdemeanor if: (A) it results in bodily injury to any other person." Id. at 669 (quoting Ind. Code § 35-42-2-1). Flores had pleaded guilty to a "Class A" version of the offense meaning that his touching of another person did result in bodily injury.

The Seventh Circuit noted that Indiana courts had construed the state's battery statute to apply to situations in which the defendant had only touched a person's glasses or merely bruised a person. Id. at 670. "Any contact counts as a 'touch'—and this includes indirect as well as direct contact, so a snowball, spitball, or paper airplane qualifies if it hits the target." Id. at 669. The court also remarked that: "[I]f the paper airplane inflicts a paper cut, the snowball causes a yelp of pain, or a squeeze of the arm causes a bruise, the aggressor has committed a Class

12

A misdemeanor (provided that the act was rude, angry, or insolent). It is hard to describe any of this as 'violence.'" Id. at 670.

The court acknowledged that any contact requires force: "Every battery entails a touch, and it is impossible to touch someone without applying some force, if only a smidgeon." Id. at 672. It then concluded that "[t]o avoid collapsing the distinction between violent and non-violent offenses, we must treat the word 'force' as having a meaning in the legal community that differs from its meaning in the physics community. The way to do this is to insist that the force be violent in nature—the sort that is intended to cause bodily injury . . . ." Id. The court reasoned that the elements of Flores' offense constituted only "physical contact" and not physical force. Id. at 672. Because the "elements rather than the real activities are dispositive," the court held that the element of physical force was not satisfied. Id.

The Flores court seemed to acknowledge the academic nature of its reasoning, at least as applied to the facts of that case. It conceded: "Now Flores did not tickle his wife with a feather during a domestic quarrel, causing her to stumble and bruise her arm. That would not have led to a prosecution, let alone to a year's imprisonment. The police report shows that Flores attacked and beat his wife even though prior violence had led to an order barring him from having any

13

contact with her." Id. at 670.  The concurring opinion in Flores noted that "the result we reach, though correct on the law, is divorced from common sense.  For one thing, people don't get charged criminally for expending a newton of force against victims.  Flores actually beat his wife—after violating a restraining order based on at least one prior beating—and got a one-year prison sentence for doing so . . . . I do not applaud the result we reach."  Id. at 672–73 (Evans, J., concurring).

Unlike the Seventh Circuit, we do not feel compelled to reach a result at war with common sense, particularly when doing so would require us to alter the plain language of what Congress has written.  Like the Ninth Circuit in Belless, the Seventh Circuit in Flores has essentially read into a statutory definition a word that is not there—inserting "violent" before the words "physical force."   If Congress had meant to say "violent physical force" it easily could have done so.  By reading into a statutory provision a restrictive word in order to guard against an absurd result that it admits has little or no basis in the real world, the Flores court forced itself to what could be described as an absurd result in the case before it.   In doing so, it produced a decision that supplies, in the words of the concurring judge, a good example for those who criticize our system of law (court decisions) as "'not tethered very closely to common sense.'"  Flores, 350 F.3d at 673 (Evans, J.,

14

concurring) (quoting from United States v. Cranley, 350 F.3d 617, 620 (7th Cir. 2003)). We will stick to the common sense approach and result where we can, and here we can.

## III.

The second reason Griffith advances for his contention that his conviction for violating the Georgia battery statute, Ga. Code Ann. § 16-5-23(a)(1), does not qualify as a predicate offense for § 922(g)(9) purposes is that the Georgia statute does not require as an element the existence of a domestic relationship. It does provide an enhanced penalty when the battery occurs between those involved in a domestic relationship, Ga. Code Ann. § 16-5-23(f), but none is required for the battery crime itself.

Griffith did not raise this issue in the district court, so our review is limited to plain error. We need go no further than the first step of the plain error analysis, which asks whether there is any error to start with. United States v. Olano, 507 U.S. 725, 732–33, 113 S. Ct. 1770, 1777 (1993). There is not. In United States v. Chavez, 204 F.3d 1305 (11th Cir. 2000), we said that it is enough to qualify as a crime of domestic violence if the offense has as an element the use, attempted use or threatened use of physical force, and "[i]t was committed against a spouse." Id. at 1313–14. The prior conviction there was for violation of 18 U.S.C. § 113(a)(4),

15

which does not require the existence of a domestic relationship, yet we held it qualified as a predicate crime for § 922(g)(9) purposes. Id. Several other courts have cited our Chavez opinion for the proposition that while the domestic nature of the relationship must be a fact, it need not be an element of the prior offense. E.g. United States v.Heckenliable, 446 F.3d 1048, 1049 n.2 (10th Cir. 2006); United States v. Shelton, 325 F.3d 553, 562 n.12 (5th Cir. 2003); Belless, 338 F.3d at 1066 n.6; United States v. Kavoukian, 315 F.3d 139, 142 (2d Cir. 2002); United States v. Watkins, 407 F. Supp. 2d 825, 826 (E.D. Ky. 2006).

The reasoning behind this conclusion is adequately laid out in the decisions of all eight other circuits to address this issue, each of which has reached the same holding that we did in Chavez. See Heckenliable, 446 F.3d at 1050–52; Shelton, 325 F.3d at 561–62; White v. Dep't of Justice, 328 F.3d 1361, 1364–67 (Fed. Cir. 2003); Belless, 338 F.3d at 1065–67; Kavoukian, 315 F.3d at 142–45; United States v. Barnes, 295 F.3d 1354, 1358–66 (D.C. Cir. 2002); United States v. Meade, 175 F.3d 215, 218–220 (1st Cir. 1999); Smith, 171 F.3d at 620. No circuits have gone the other way. Therefore, as we held in Chavez, a domestic relationship must exist as part of the facts giving rise to the prior offense, but it need not be an element of that offense.

**AFFIRMED**.