[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 31, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-12650
Non-Argument Calendar

_____

D. C. Docket No. 05-00031-CR-01-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

KHALID Z. SARSOUR,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(March 31, 2008)

Before BIRCH, CARNES and BARKETT, Circuit Judges.

PER CURIAM:

A federal grand jury indicted Khalid Sarsour on 5 counts of the unauthorized use of food stamp benefits with a value of $100 or more and 5 counts of the unauthorized use of food stamp benefits with a value of $100 or less, all in violation of 7 U.S.C. § 2024(b). Sarsour pled guilty on all counts. On appeal, he disputes two sentencing enhancements, for total loss and for abuse of trust, and one reduction denial, for acceptance of responsibility. We AFFIRM.

## I. BACKGROUND

According to the presentence investigation report ("PSI") adopted by the district court, the federal food stamp program is administered by the United States Department of Agriculture ("USDA") to help eligible families in need of food assistance. Food stamps are issued in Georgia through the use of the Electronic Benefit Transfer ("EBT") system. Recipients are credited with a specific monetary amount per month in their EBT account, and the account balance is electronically reduced when a food purchase is made at a participating store. Stores must apply and receive authorization from the USDA before accepting EBT funds. Food stamps are non-transferrable, cannot be used to buy certain items such as alcohol or tobacco, and cannot be exchanged for cash.

2

Sarsour owned Ace Market, Inc., which operated under the name Lee's Supermarket, from 2001 through 2004 in Augusta, Georgia. Unusual EBT activity at Lee's Supermarket, including a high number of sales ending in even dollar amounts, such as $80, and multiple EBT withdrawals in short periods of time, prompted an investigation. Agents interviewed a number of food stamp recipients during the investigation, and many admitted to selling their EBT benefits, allowing others to do so, or misusing benefits at Lee's Supermarket between 2001 and 2004.

The probation officer calculated the total loss for the years 2001 to 2004 by using an equation where the amount of loss equaled the total amount of benefits redeemed minus the estimated total retail value of qualifying goods sold. Benefits redeemed at Lee's Supermarket from 2001 to 2004 equaled $1,501,196.62. The estimated total retail value of qualifying goods sold by food stamps during the same period was $1,033,380.25. The difference between the two amounts is $467,816.37. The probation officer estimated the total of retail value of qualifying goods by multiplying the total amount of qualifying goods bought for the market by Sarsour's own estimate that 64% of his sales were from food stamps.

The probation officer assigned Sarsour a base offense level of six, pursuant to U.S.S.G. § 2B1.1(a)(2) (2006). He received a 14-level enhancement because the amount of loss exceeded $400,000, U.S.S.G. § 2B1.1(b)(1)(H), and a two-level

3

enhancement for abuse of a position of public trust, in accordance with U.S.S.G. § 3B1.3. Based on a total offense level of 22 and a criminal history category of I, Sarsour's sentencing range was 41-51 months of imprisonment.

Sarsour filed three objections to the PSI which mirror his issues on appeal. He objected to the estimated loss amount, the two-point adjustment for abuse of trust, and the refusal to award a three-point reduction for acceptance of responsibility. At the sentencing hearing, the district court began by noting that "there [were] a number of objections" to be addressed. R3 at 3. Sarsour's lawyer responded that "[a]ll of our objections, in a nutshell, basically go to how much is the loss." Id. at 4. The parties then spent almost the entire sentencing hearing discussing only the loss determination. Two of Sarsour's former employees testified. Timothy Wright testified that a large majority of the market's customers utilized food stamps. Valerie Key testified that there were three cash registers, and each one was equipped with EBT technology. Key estimated that 85% of the market's sales were EBT transactions, and she had never redeemed food stamps for cash or allowed persons to purchase alcohol or cigarettes with EBT funds.

With respect to the amount of loss, Sarsour's primary challenge to the PSI's calculation was that the percentage used for the number of food sales that were paid by food stamps was too low. The probation officer explained his calculation,

4

which used the percentage that Sarsour had originally cited as the number of food sales conducted via food stamps. The government conceded that Sarsour was not licensed to receive food stamp payments until early 2003. Id. at 48.

As the sentencing hearing neared its end, the district court noted that "what [it had] heard this morning more likely resembles a case presented in the defense of the issue of the guilt or the innocence itself." Id. at 124. Sarsour was "the only one who [knew] what happened here and the rest of us are just trying to put it together looking through a glass that is almost obscured." Id. at 126. The district court acknowledged that the loss determination was an estimate, but based upon the evidence it had heard, it was convinced that the probation officer's calculations were accurate, and Sarsour had defrauded the government of at least $400,000. The district court adopted the PSI's factual findings and guideline calculations and sentenced him to 48 months of imprisonment.

## II. DISCUSSION

A. Enhancement for Total Loss

We review the district court's amount of loss calculation for clear error. United States v. Medina, 485 F.3d 1291, 1297 (11th Cir. 2007). However, objections raised for the first time on appeal are reviewed for plain error. United States v. Mangaroo, 504 F.3d 1350, 1353 (11th Cir. 2007). Under this standard,

we can reverse if "there is (1) an error, (2) that is plain, (3) that affects substantial rights . . ., and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings. Id. The district court's loss calculation need only be a reasonable estimate of the loss. U.S.S.G. § 2B1.1, comment. (n.3(C)).

Sarsour asserts that the district court erred in calculating the loss amount because it included improper transactions. He argues (1) that he only became the licensed food stamp merchant in January 2003, and therefore could not have made any requests for food stamp payments prior to that date, and (2) that despite his incapacitation from a car accident for a number of months in 2003, the district court erroneously included the entire year in its calculation of total loss. He concedes that this basis for challenging the loss amount was not presented to the district court and must be reviewed for plain error. Appellant's Br. at 16-17.

1. Food Stamp License

Violations of the food stamp program can be committed by "*whoever* knowingly uses, transfers, acquires, alters, or possesses coupons, authorization cards, or access devices in any manner contrary to this chapter." 7 U.S.C. § 2024(b)(1) (emphasis added). "In interpreting a statute we look first to the plain meaning of its words." United States v. Griffith, 455 F.3d 1339, 1342 (11th Cir. 2006) (citation omitted). The use of the term "whoever" instructs us that

6

participation in the food stamp program is not required to violate the statute. See, e.g., U.S. v. Khatib, 706 F.2d 213, 218-19 (7th Cir. 1983) ("The language of the statute is not restrictive."). The district court properly estimated the total loss by including losses from 2001 and 2002 because Sarsour bought the store in 2001 and then worked there daily. Sarsour's majority shareholder position and active involvement with the market on a day-to-day basis unequivocally implicate his involvement in the food stamp fraud. The PSI confirms Sarsour's role in 2001 and 2002:

> food stamp redemptions at [Lee's Market] increased dramatically in 2001. In the year 2000, redemptions ranged from a low of $5,378 in May of 2000, to a high of $12,086.87 in December of 200[0]. By way of contrast, the redemptions averaged $14,818.33 per month in 2001, and $43,496.44 per month in 2002.

PSI at ¶ 16.

2. Absence from the Business

While Sarsour now argues that he was incapacitated from a car accident and was absent from the store for several months of 2003, he did not make this argument to the sentencing court. Appellant's Br. at 16-17. Indeed, the details of Sarsour's accident and broken arm are only briefly discussed in one pleading. Appellant's Br. at 3 (citing R1-27). The district court did not commit plain error when it included all of the months of 2003 in the loss total because the effect of

Sarsour's injury on his involvement at the market was not apparent from the record.

B. Denial of Acceptance of Responsibility

We ordinarily review a district court's denial of acceptance of responsibility for clear error. United States v. Moriarty, 429 F.3d 1012, 1022 (11th Cir. 2005) (per curiam). However, we review for plain error when a defendant does not state clearly the grounds for an objection in the district court. United States v. Massey, 443 F.3d 814, 818 (11th Cir. 2006). In order to preserve an objection, a defendant "must raise the point in such clear and simple language that the trial court may not misunderstand it." Id. at 819 (quotation omitted). Sarsour merely "object[ed] to the denial of acceptance of responsibility," PSI addendum at 3, and so we review the denial for plain error.

Sarsour believes that he was denied an acceptance of responsibility reduction solely because he changed the markup percentage used for goods sold at Lee's Supermarket. By changing his markup he actually increased his potential loss amount. Sarsour contends that his acknowledgment of engaging in food stamp fraud justifies the granting of an acceptance of responsibility reduction.

The Guidelines state that if the defendant "clearly demonstrates acceptance of responsibility," the offense level should be reduced. U.S.S.G. § 3E1.1(a).

8

Appropriate considerations in determining whether a defendant qualifies for the reduction include truthfully admitting the conduct comprising the offense of conviction, the timeliness of the defendant's conduct in accepting responsibility, and assistance to authorities in recovering the fruits of the offense. Id., comment. (n.1). A defendant may not "falsely den[y] or frivolously contest[], relevant conduct that the court determines to be true." Id. The district court deserves "great deference" on review. Id., comment. (n.5).

During sentencing, the court stated that, "what [it had] heard this morning more likely resemble[d] a case presented in the defense of the issue of the guilt or the innocence itself." R3 at 124. "A defendant who enters a guilty plea is not entitled to an adjustment under this section as a matter of right." U.S.S.G. § 3E1.1, comment. (n.3). Based on the testimony before the court and the assertions of the PSI, it was not plain error to deny the acceptance of responsibility reduction.

C. Abuse of Trust Enhancement

The abuse of trust enhancement applies "[i]f the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense." U.S.S.G. § 3B1.3. The government must establish that (1) the defendant held a place of private or public trust, and (2) abused that position in a way that significantly facilitated the

9

commission of the offense. United States v. Ward, 222 F.3d 909, 911 (11th Cir. 2000). We have held that the enhancement only applies when the victim conferred the trust. United States v. Walker, 490 F.3d 1282, 1300 (11th Cir. 2007).

We review a district court's factual findings for clear error and its application of the Guidelines de novo. Walker, 490 F.3d at 1299. However, objections raised for the first time on appeal are reviewed for plain error. Mangaroo, 504 F.3d at 1353. Since this is the first time Sarsour has advanced this argument, we review it for plain error.

Sarsour asserts that the abuse of trust enhancement was erroneous because there was a fiscal intermediary between him and the USDA. Relying upon United States v. Garrison, 133 F.3d 831 (11th Cir. 1998), he contends that his relationship with the victim, the USDA, was too attenuated to apply the enhancement. In Garrison, we held that the chief executive of a home healthcare provider was "not directly in a position of trust in relation to Medicare. While Medicare may have been the victim in [that] case, the [abuse of trust] enhancement [was] unavailable because Garrison did not occupy a sufficiently proximate position of trust relative to Medicare." 133 F.3d at 841. Most important to our analysis was that Garrison's Medicare requests had to be reviewed and approved by a third party, Aetna, before being submitted to Medicare for reimbursement. Id.

10

The food stamp program does use a third party, which is involved in the EBT system. Citibank Production System ("Citibank") monitors EBT accounts, and it approves debit requests if there are sufficient funds in a recipient's account. Citibank then deposits funds into the retail store's account and later receives credit from the Federal Reserve Bank. Citibank did approve the debits from EBT accounts and facilitate the monetary transactions between Lee's Supermarket and the USDA. Citibank's responsibility, however, was only to ensure that money was available in a recipient's account. From the record, it does not appear that Citibank had a responsibility to determine whether the use of the food stamp was for an acceptable item, if the requested sum was a suspiciously round number, or if there were many large sum requests in a short period of time. Because Citibank did not examine and review the underlying validity of each food stamp request, the comparison to Garrison is inapposite. See Garrison, 133 F.3d at 841 (emphasizing that medicare requests were reviewed and approved by Aetna before submission to the government). Sarsour had to receive approval from the USDA to participate in the food stamp program, and that approval allowed him to engage in food stamp fraud. The district court did not plainly err in determining that the abuse of trust enhancement was applicable in this case.

11

## III. CONCLUSION

Sarsour pled guilty to the unauthorized use of food stamps, in violation of 7 U.S.C. § 2024(b). On appeal, he disputes the sentence imposed by the district court. As we have explained, the court did not err in applying the Guidelines to Sarsour. Accordingly, Sarsour's sentence is **AFFIRMED.**