**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Robert Dale BELLESS, Defendant– Appellant.**

No. 02–30089.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 4, 2002.

Filed Aug. 11, 2003.

Mark S. Werner (briefed), and Robin Hammond (argued), Federal Defenders, Billings, MT, for the appellant.

C. Ed Laws, Assistant U.S. Attorney, Billings, MT, for the appellee.

Before: B. FLETCHER, KLEINFELD and McKEOWN, Circuit Judges.

KLEINFELD, Circuit Judge.

Robert Belless was convicted of illegally possessing a firearm, in violation of 18 U.S.C. § 922(g)(9), which makes possession of a firearm illegal for anyone "who has been convicted in any court of a misdemeanor crime of domestic violence." He challenges his federal conviction on the grounds that his prior misdemeanor conviction is not within the firearm statute's

definition of a crime of domestic violence, as set out in 18 U.S.C. § 921(a)(33)(A), and that the misdemeanor conviction was invalid for the purposes of the federal statute because he pleaded guilty without the benefit of counsel and was not properly advised of his rights before he entered his plea. We reverse and remand.

## FACTS

Robert Belless's prior crime arose from a citation for violating Wyoming Statute § 6-2-501(b), which states that he committed "assault & battery by assaulting Kristen Belless—grabbing her chest/neck area and pushing her against her car in an angry manner." The citation does not say so, but Kristen Belless was married to Robert Belless when he committed battery against her.

He was put in jail, and taken to court the next day. There, without a lawyer, he pleaded guilty. Before sentencing, he obtained counsel, who moved unsuccessfully to have Belless's plea vacated. Belless was sentenced to serve ninety days, all suspended except for the time in jail he had already served, plus a $270 fine and six months probation.

Six years later, in 2001, Belless was indicted in federal court for the felony of possessing a firearm "having been convicted of a misdemeanor crime of domestic violence."[1] The district court denied his motion to dismiss the indictment. He then pleaded guilty but preserved his right to appeal the district court's ruling.

■ We review the district court's denial of Belless's motion to dismiss de novo.[2]

## THE UNDERLYING CRIME

The federal firearms statute makes it a felony for any person "who has been convicted in any court of a misdemeanor crime of domestic violence" to possess a firearm "in or affecting commerce."[3] The definitions section of the federal firearms statute says that "misdemeanor crime of domestic violence" means a misdemeanor that "has, as an element, the use or attempted use of physical force, or threatened use of a deadly weapon, committed by a current or former spouse."[4] Belless's challenge goes both to whether a domestic relationship must be an element of the crime and to what kind of force the crime requires.

### A. Domestic Relationship

■ The Wyoming crime to which Belless pleaded guilty does not include as an element that the victim share one of the domestic relationships specified in 18 U.S.C. § 921(a)(33)(A)(ii) with the perpetrator. It says only that "A person is guilty of battery if he unlawfully touches another in a rude, insolent or angry manner or intentionally, knowingly or recklessly causes bodily injury to another."[5] One who engages in conduct that violates the statute is guilty of the crime whether the victim is a spouse or a perfect stranger. Belless argues that the federal statute requires the state statute to include an "ele-

---

1. 18 U.S.C. § 922(g)(9).

2. *United States v. Lualemaga,* 280 F.3d 1260, 1263 (9th Cir.2002).

3. 18 U.S.C. § 922(g)(9).

4. The subsection states that a misdemeanor crime of domestic violence "has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weap-

on, committed by a current or former spouse, parent, or guardian of the victim by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent or guardian or by a person similarly situated to a spouse, parent, or guardian of the victim." 18 U.S.C. § 921(a)(33)(A)(ii).

5. Wyoming Statute § 6-2-501(b).

ment" that the crime be "committed by a current or former spouse."

The federal statute does not require that the misdemeanor statute charge a domestic relationship as an element. It requires only that the misdemeanor have been committed against a person who was in one of the specified domestic relationships. It is uncontested in this case that the victim named in the Wyoming citation, Kristen Belless, was Belless's wife, but he could have been convicted of the crime even had he grabbed a perfect stranger by the arm and angrily shoved him against his car. We find no indication that Congress intended to exclude from the misdemeanors that may trigger 18 U.S.C. § 921(a)(33)(A)(ii) those crimes that are in fact committed against persons who have a domestic relationship specified in the statute, even if the triggering crime does not include such a relationship as an element. Our construction is consistent with the position taken by all seven of our sister circuits to have spoken to the issue.[6]

We look first to the text and plain meaning of the federal statute.[7] First, the grammar and syntax of the federal statute do not require that the domestic relationship be an element of the predicate misdemeanor. The definition says "has as an element," not, for instance, "has as elements," indicating that it speaks only of a single element rather than in the plural. Immediately following the word "element" is the phrase "use or attempted use of physical force or threatened use of a deadly weapon." This is a discrete attribute that clearly qualifies as an "element" of

the underlying crime. After that comes a second, distinct attribute—the domestic relationship. The amount of force used and the relationship between the aggressor and victim are two very different things, and thus would constitute two different elements. Since the statute only requires one element, we read it to require only the one immediately following the word "element" in the statute—i.e., the use of physical force. The First Circuit uses this analysis, reading the "singular ... to refer only to the immediately following attribute."[8]

We agree with the D.C. Circuit that to read the "committed by" phrase as modifying the phrase that immediately precedes it ("the use or attempted use of physical force, or the threatened use of a deadly weapon") would be grammatically unsound.[9] Such a reading would treat the entire subsection as a single element with two descriptive criteria. However, as the D.C. Circuit noted, the statute should be read from the beginning to form a complete sentence, and the "committed by" phrase is best understood to modify the word "offense" at the beginning of this section of the statute. One can "commit" a crime or an offense, but one does not "commit" "force" or "use," much less an "element."

> In short, a "misdemeanor crime of domestic violence" means an offense that is a misdemeanor, has, as an element, the use of force and was committed by a person with the requisite relationship. An illustration using simpler language

---

6. See *White v. Dept. of Justice*, 328 F.3d 1361 (Fed.Cir.2003); *United States v. Shelton*, 325 F.3d 553 (5th Cir.2003); *United States v. Kavoukian*, 315 F.3d 139 (2d Cir.2002); *United States v. Barnes*, 295 F.3d 1354 (D.C.Cir. 2002); *United States v. Chavez*, 204 F.3d 1305 (11th Cir.2000); *United States v. Meade*, 175 F.3d 215 (1st Cir.1999); *United States v. Smith*, 171 F.3d 617 (8th Cir.1999).

7. See, e.g., *Microsoft Corp. v. C.I.R.*, 311 F.3d 1178, 1183 (9th Cir.2002).

8. *Meade*, 175 F.3d at 218–19.

9. See *Barnes*, 295 F.3d at 1360–63.

demonstrates the point. If the statute read "larceny means an offense that has, as an element, monetary gain, committed by a person ...," it would be obvious that "committed" modifies "offense" and that monetary gain is the only "element." Just as "monetary gain" is not "committed," the "use of force" is not "committed." The "offense" is "committed." [10]

True, in making "element" singular, Congress could have made a syntactical error. [11] "Syntax cannot always control construction. The legislative process may have subordinated clear writing to some other goal. We must examine the meaning of the words to see whether one construction makes more sense than the other as a means of attributing a rational purpose to Congress." [12] The purpose of the statute is to keep firearms out of the hands of people whose past violence in domestic relationships makes them untrustworthy custodians of deadly force. That purpose does not support a limitation of the reach of the firearm statute to past misdemeanors where domestic violence is an element of the crime charged as opposed to a proved aspect of the defendant's conduct in committing the predicate offense. The more traditional criminal statutes criminalize violence regardless of the victim's relationship to the perpetrator, so many cases of domestic violence will be prosecuted under statutes that do not specify a domestic relationship as an element. [13]

The alternative reading has some force. We might suppose that Congress did indeed make a error in syntax, and may have intended to limit predicate offenses to those with a domestic element, both to avoid questions years later about what the relationship might have been between the perpetrator and the victim, and to spur states to pass statutes that expressly focus on domestic violence. The argument for so construing the statute, however, is not so compelling as to persuade us to depart from the views of all the other circuits to rule on the issue.

Thus we reject Belless's argument that the federal statute requires that the predicate offense have the domestic relationship as an element.

### B. Force

■ The federal statute says that the predicate offense must include as an element "the use or attempted use of physical force, or the threatened use of a deadly weapon." The Wyoming statute under which Belless was convicted defines the crime as "unlawfully touches another in a rude, insolent or angry manner or intentionally, knowingly or recklessly causes bodily injury to another." Belless argues (correctly, we conclude) that the Wyoming statute embraces conduct that does not include "use or attempted use of physical force."

Any touching constitutes "physical force" in the sense of Newtonian mechan-

---

10. *Id.* at 1360.

11. 18 U.S.C. § 921(a)(33)(A)(ii) does indeed say "except as provided in subparagraph (C)," even though there is no subparagraph (C), so as we explain below, the assumption that legislative drafters could not have made a grammatical error cannot be the end of the analysis.

12. *Longview Fibre Company v. Rasmussen,* 980 F.2d 1307, 1311 (9th Cir.1992).

13. "Fewer than half of the states currently have a 'domestic assault' statute that expressly includes as elements both the use of force and a specific relationship between the offender and victim. Most states, and the District of Columbia, charge domestic violence offenders under general assault statutes." *Barnes,* 295 F.3d at 1364. *See also Meade,* 175 F.3d at 220 (requiring a domestic relationship element "would render the statute a dead letter in most jurisdictions").

ics. Mass is accelerated, and atoms are displaced. Our purpose in this statutory construction exercise, though, is to assign criminal responsibility, not to do physics. As a matter of law, we hold that the physical force to which the federal statute refers is not *de minimis*. The traditional doctrine of *noscitur a sociis*, that "the meaning of doubtful words may be determined by reference to associated words and phrases," guides us in our inquiry.[14] In the federal definition, the associated phrase is "threatened use of a deadly weapon." That is a gravely serious threat to apply physical force. By contrast, the Wyoming statute criminalizes conduct that is minimally forcible, though ungentlemanly.

In 1959, when Vice President Richard Nixon took Soviet Premier Nikita Khrushchev around an American exhibit of an $11,000 American tract house, the Soviet leader fulminated about the foolishness of having different brands of washing machines and the unlikelihood that American workers could afford such a "Taj Mahal," as the Soviets called the house. Nixon angrily told Khrushchev just how wrong he was, jabbing the Soviet Premier's chest with his pointed finger as he expostulated with his face inches away. Had Richard Nixon been in Wyoming instead of the Soviet Union, he might have been charged with the same crime as Belless. The ungentlemanly act of hollering in anyone's face, much less a chief of state's, may be characterized as "insolent," and pointing a finger at someone, much less touching him with the finger, may fairly be character-

ized as "rude," and both men, though perhaps exaggerating their affect for the crowd,[15] looked "angry." It may well be Wyoming's purpose to enable police to arrest people in such confrontations in order to avoid the risk that rude touchings will escalate into violence.

But the Wyoming law against rude touchings does not meet the requirements for the federal statute that defines the predicate offense for a felony firearm conviction: "the use or attempted use of physical force, or the threatened use of a deadly weapon."[16] That category does not include mere impolite behavior. More inclusive battery statutes such as Wyoming's may be drafted to embrace conduct that too often leads to the more serious violence necessary as a predicate for the federal statute, but they are not limited to it, so cannot supply the necessary predicate. The phrase "physical force" in the federal definition at 18 U.S.C. § 921(a)(33)(A)(ii) means the violent use of force against the body of another individual.

Our analysis is not in conflict with the First Circuit's decision that a Maine statute that criminalized "offensive physical contact" furnished a predicate for a conviction under § 922(g)(9).[17] As the First Circuit noted in *Nason*, the Maine statute, though broad, had been narrowed by caselaw to "require[ ] more than a mere touching of another."[18]

The record indicates that Belless was charged with conduct that was a violent act and not merely a rude or insolent

---

14. Sutherland Stat. Const. § 47.16 (5th Ed.).

15. *See* Richard Nixon, *The Memoirs of Richard Nixon*, 208–09 (1978); William Safire, *Before the Fall*, 3–6 (1975). Safire, who set up the exhibit as a press agent for the tract house developer, says both men, after the cameras were turned off, made it clear that they had enjoyed themselves immensely.

16. 18 U.S.C. § 921(a)(33)(A)(ii).

17. *United States v. Nason*, 269 F.3d 10, 16 (1st Cir.2001).

18. *Nason*, 269 F.3d at 19(quoting *State v. Pozzuoli*, 693 A.2d 745, 747 (Me.1997)).

touching. But the record does not reveal the conduct to which he pleaded and for which he was convicted. Accordingly, we cannot conclude that the trier of fact, the Wyoming judge in this case, necessarily found Belless guilty of conduct that, under a modified categorical approach, serves as a predicate offense.[19]

## C. Right to Counsel

■ When Belless pleaded guilty to misdemeanor battery of his wife, he did not have counsel. The federal statute that prohibits possession of a firearm by persons who have been convicted of certain crimes of domestic violence requires that a defendant have been represented by counsel or have waived the right to counsel knowingly and intelligently before being convicted of a predicate offense. "A person shall not be considered to have been convicted of such an offense for purposes of this chapter unless the person was represented by counsel in the case, or knowingly and intelligently waived the right to counsel in the case."[20] Belless argues, correctly under controlling circuit authority, that he did not knowingly and intelligently waive the right to counsel for purposes of the statute.

In *United States v. Akins* we held that, "for purposes of 18 U.S.C. § 922(g)(9), a defendant pleading guilty to a misdemeanor must be informed of the dangers and disadvantages of self-representation before a waiver of the right to counsel will be deemed knowing and intelligent."[21] We further held that a written waiver that fails to warn of those dangers and disadvantages is not sufficient to satisfy the statutory condition, at least where the record does not show that the court gave the defendant oral warnings or otherwise educated him on the dangers and disadvantages of self representation. The waiver the defendant signed in *Akins* recited that it was "knowing and intelligent," but we held that the mere recitation did not make it so.

The case at bar is controlled by *Akins* in this respect. Belless signed a written waiver, but the form he signed did not include a warning of the dangers and disadvantages of self representation. There is no record of any other such warning, oral or written. The written form describes itself as a "dialogue between Defendant and the Court," and provides check-boxes next to several yes or no questions to be answered by the defendant. Calling it a "dialogue" does not make it so, any more than calling the waiver "knowing and intelligent" in *Akins* made it so. Thus Belless's predicate conviction does not, under *Akins*, meet the statutory condition that the prior conviction have been obtained with counsel or that the right to counsel have been waived knowingly and intelligently.

We need not reach the question of whether Belless's Sixth Amendment rights were violated because we conclude that the statutory condition was not met.

Although the Wyoming battery statute need not include a domestic relationship as an element of the crime in order for a conviction under it to serve as a predicate offense for a conviction under the federal firearms statute, it encompasses less violent behavior than the requisite use or attempted use of physical force and thus is too broad to qualify as a "misdemeanor crime of domestic violence."[22] Additionally, Belless did not knowingly and intelli-

**19.** *Taylor v. United States,* 495 U.S. 575, 602, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990); *cf. United States v. Velasco–Medina,* 305 F.3d 839, 850–51 (9th Cir.2002).

**20.** 18 U.S.C. § 921(a)(33)(B)(i)(I).

**21.** 276 F.3d 1141, 1149 (9th Cir.2002).

**22.** 18 U.S.C. § 921(a)(33)(A)(ii).

gently waive his right to counsel when he pled guilty to the misdemeanor crime, as is required by the federal statute.[23]

REVERSED AND REMANDED.