5/6/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| MARK SHIREY,<br><br>　　　Plaintiff and Appellant,<br><br>　　　v.<br><br>LOS ANGELES COUNTY CIVIL<br>SERVICE COMMISSION,<br><br>　　　Defendant;<br><br>LOS ANGELES COUNTY SHERIFF'S<br>DEPARTMENT,<br><br>　　　Real Party in Interest and<br>Respondent. | B238355<br><br>(Los Angeles County<br>Super. Ct. No. BS130036) |

APPEAL from a judgment of the Superior Court of Los Angeles County. James C. Chalfant, Judge. Reversed and remanded with directions.

Ronald Talmo and Scott D. Hughes for Plaintiff and Appellant.

Hausman & Sosa, Jeffrey M. Hausman, Larry D. Stratton, and Vincent C. McGowan for Real Party in Interest and Respondent.

\* \* \* \* \* \* \* \*

Plaintiff and appellant Mark Shirey, a former deputy sheriff, was discharged in 2009 by his employer, real party in interest and respondent Los Angeles County Sheriff's Department (Department). Plaintiff appealed his discharge to defendant Civil Service Commission of the County of Los Angeles (Commission). The Commission upheld the Department's decision to discharge plaintiff. Plaintiff sought a peremptory writ of mandate in the superior court for reinstatement and backpay. The court denied plaintiff's writ petition.

Plaintiff appeals, contending the Commission abused its discretion, and the trial court's decision is contrary to the law. At the heart of this appeal is a dispute over whether the federal Gun Control Act of 1968, as amended in 1996 (18 U.S.C. § 921 et seq.) prohibited plaintiff from possessing a firearm because of his conviction of misdemeanor battery upon a domestic partner. There is no dispute on appeal that, if plaintiff is prohibited from possessing a firearm under the federal statute, he was properly discharged.

We reverse, finding the trial court incorrectly concluded the United States Supreme Court opinion in *United States v. Hayes* (2009) 555 U.S. 415 (*Hayes*) established plaintiff's battery conviction qualifies as a "misdemeanor crime of domestic violence" under the Gun Control Act, and thus, the Commission abused its discretion in determining the federal gun possession ban applied to plaintiff.

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff began his career as a deputy sheriff with the Department in November 1982. In December 1993, plaintiff was arrested and charged, pursuant to Penal Code section 273.5, with a misdemeanor violation of inflicting corporal injury on his girlfriend with whom he shared a residence. Plaintiff pled not guilty, waived jury and the case proceeded to a bench trial. In June 1994, the court found plaintiff not guilty of violating section 273.5, but guilty of the lesser included offense of simple battery in violation of section 242, a misdemeanor.

Plaintiff was placed on probation for three years. Plaintiff filed a posttrial motion requesting an order granting him relief from the prohibition against possessing and

owning firearms under Penal Code section 12021 based on his battery conviction. On June 28, 1994, the court granted plaintiff's motion.

After successfully completing probation, plaintiff petitioned to have his battery conviction set aside pursuant to Penal Code section 1203.4. On March 11, 1997, the court granted plaintiff's petition, ordering as follows: "It appearing to the court from the records on file in this case, and from the foregoing petition, that the defendant herein is eligible for the relief requested. [¶] It is hereby ordered that the plea, verdict, or finding of guilty in the above-entitled action be set aside and vacated and a plea of not guilty be entered, and that the complaint be, and is hereby dismissed. Further, if this order is granted pursuant to [section] 1203.4, the defendant is required to disclose the above conviction in response to any direct question contained in any questionnaire or application for public office or for licensure by any state or local agency, or for contracting with the California State Lottery."

As a result of these events, the Department suspended plaintiff for 15 days. However, other than this discipline, plaintiff continued to work as a deputy sheriff for the Department and, by all accounts, was an exemplary employee. In 2009, plaintiff was working in Communications and Fleet Management, performing primarily office and administrative-related work. In his May 2009 performance evaluation, plaintiff was described as "a definite asset" to the Department and rated "outstanding," the highest rating level.

That same month, however, the Department sent plaintiff a letter notifying him of the Department's intent to discharge him, on the ground that federal law prohibited him from carrying a firearm because of his 1994 battery conviction, thereby disqualifying him from continued employment as a deputy sheriff. The notice cited title 18 of the United States Code section 922(g)(9) (hereafter section 922(g)(9)) of the federal Gun Control Act and the then recent United States Supreme Court opinion in *Hayes*.

Plaintiff responded to the Department's notice, and participated in a hearing pursuant to *Skelly v. State Personnel Board* (1975) 15 Cal.3d 194. During this process, plaintiff advised the Department he had submitted a personal firearms eligibility application to the California Department of Justice, Bureau of Firearms. On June 24,

3

2009, the Department issued its formal notice to plaintiff discharging him from employment with the Department, stating the same grounds identified in the notice of intent to discharge. Shortly thereafter, plaintiff received notice in the mail from the California Department of Justice that he was eligible under California law to possess and purchase firearms.

Plaintiff appealed to the Commission. Plaintiff and the Department stipulated to the material facts underlying the discharge decision. At the hearing, Chief David Betkey testified. He stated the "single reason" for plaintiff's discharge was the Department's determination, based on advice from County Counsel, that plaintiff was prohibited from carrying a firearm under federal law and therefore was disqualified from being a deputy sheriff as the possession of a firearm is a prerequisite to holding that position. According to Chief Betkey, other than the 1994 battery conviction, there was nothing in plaintiff's personnel history with the Department "that would discredit him or the . . . Department, and [plaintiff] had a pretty stellar career."

The hearing officer issued a decision recommending the Commission reinstate plaintiff as a deputy sheriff and award backpay. The Department filed objections. The Commission voted to sustain the Department's objections and rejected the hearing officer's recommendation for plaintiff to be reinstated. In its final decision of October 20, 2010, the Commission affirmed the Department's decision to discharge plaintiff. The decision stated "[section] 922(g)(9) applies to [plaintiff] and makes it unlawful for him to possess any firearm or ammunition. That by itself, and not any misconduct by [plaintiff,] disqualifies him from employment as a peace officer and as a Deputy Sheriff in the County of Los Angeles."

Plaintiff filed a petition in the superior court seeking a peremptory writ of mandate directing the Commission to vacate its decision and order the reinstatement of plaintiff as a deputy sheriff, with backpay. Before the hearing on the petition, the trial court issued a tentative ruling denying the petition on the grounds that plaintiff was prohibited from possessing a firearm under the Gun Control Act and his conviction of misdemeanor battery was not expunged. After argument, the trial court changed its ruling and granted plaintiff's petition on the ground that his conviction had been expunged. However, the

4

court subsequently entertained the Department's motion for a new trial, denied the petition and entered judgment in favor of the Commission and the Department. This timely appeal followed.

## DISCUSSION

Plaintiff filed his petition in the superior court pursuant to Code of Civil Procedure section 1094.5, contending the Commission's decision to uphold the Department's decision to discharge him was an abuse of discretion, being both unsupported by the evidence and contrary to law. Plaintiff contends on appeal the trial court erroneously interpreted federal law in denying his petition and upholding his discharge.

The Commission's October 20, 2010 order affirming plaintiff's discharge affected a fundamental vested right. Therefore, the trial court was required to, and did, exercise its independent judgment in reviewing the administrative record. (*Davis v. Los Angeles Unified School Dist. Personnel Com.* (2007) 152 Cal.App.4th 1122, 1130 [agency decision impacting employee's fundamental vested right in his or her job requires exercise of trial court's independent review]; accord, *Richardson v. Board of Supervisors* (1988) 203 Cal.App.3d 486, 493.) Ordinarily, our task as the reviewing court is to determine whether the trial court's findings (not the administrative agency findings) are supported by substantial evidence. (*Bixby v. Pierno* (1971) 4 Cal.3d 130, 143, fn. 10; accord, *Davis*, *supra*, at pp. 1130-1131.)

However, where, as here, the question presented is a question of law, or of statutory interpretation on undisputed facts, our review of the trial court's decision is de novo. (See *Bostean v. Los Angeles Unified School Dist.* (1998) 63 Cal.App.4th 95, 107-108 [interpretation of statutes and rules dealing with employment of public employees, presented on undisputed facts, calls for exercise of independent judgment]; see also *Riveros v. City of Los Angeles* (1996) 41 Cal.App.4th 1342, 1349-1350 & *Roe v. State Personnel Bd.* (2004) 120 Cal.App.4th 1029, 1036.) The material facts underlying plaintiff's discharge are undisputed and the resolution of the propriety of plaintiff's discharge hinges on the interpretation of applicable state and federal statutes. We therefore reject the Department's argument the substantial evidence test applies, and we exercise our independent judgment.

5

It is undisputed the sole reason for plaintiff's discharge was the Department's interpretation of federal law, specifically the *Hayes* opinion and title 18 of the United States Code section 922(g)(9) of the federal Gun Control Act, which the Department concluded prohibited plaintiff from possessing a firearm, thereby disqualifying him from being a deputy sheriff. The Department asserted the Supreme Court's 2009 opinion in *Hayes* established plaintiff's 1994 misdemeanor battery conviction under Penal Code section 242 qualified as a "misdemeanor conviction of domestic violence" under title 18 of the United States Code section 922(g)(9). The Department further contended the order plaintiff obtained in 1997 pursuant to Penal Code section 1203.4 did not qualify as an expungement under federal law and therefore, plaintiff could not possess a firearm.

Plaintiff does not dispute that if title 18 of the United States Code section 922(g)(9) applies to him, he could not lawfully carry a firearm, which would disqualify him from serving as a deputy sheriff. However, plaintiff contends the Department, the Commission and the trial court erroneously interpreted the federal statute as applying to him. Plaintiff asserts: (1) a simple battery conviction under Penal Code section 242 does not constitute a misdemeanor crime of domestic violence because a conviction under section 242 does not require the use of "physical force" within the meaning of the federal statute; and (2) plaintiff obtained a qualifying expungement under federal law by virtue of the state court order setting aside his conviction, the separate state court order relieving him of the prohibition against possession of a firearm, and the notice from the California Department of Justice Bureau of Firearms affirming plaintiff's eligibility to possess and purchase firearms.

As we explain, we agree that plaintiff's conviction for battery under Penal Code section 242 does not qualify as a predicate misdemeanor crime of domestic violence within the meaning of the federal statute, and therefore reverse.

1. **The Gun Control Act of 1968**

Since its passage, the Gun Control Act of 1968, section 921 et seq., has prohibited possession of firearms by any person convicted of a felony. (*Hayes*, *supra*, 555 U.S. at p. 418.) Specifically, section 922(g) sets forth various bases upon which the status of an individual renders it unlawful for that individual to own and possess firearms, such as

6

being convicted of a felony (§ 922(g)(1)); being adjudicated a "mental defective" (§ 922(g)(4)); being unlawfully in the United States (§ 922(g)(5)); and, being dishonorably discharged from the armed forces (§ 922(g)(6)).  "In 1996, Congress extended the prohibition to include persons convicted of 'a misdemeanor crime of domestic violence.'  [Citation.]"  (*Hayes*, at p. 418.)  The 1996 amendment is referred to as the Lautenberg Amendment.

The Lautenberg Amendment added, in pertinent part, section 922(g)(9) which provides:  "It shall be unlawful for any person –  [¶]  . . .  [¶]  . . . who has been convicted in any court of a misdemeanor crime of domestic violence,  [¶] to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."  The parties do not dispute that the federal statute embraces all firearms.

The Gun Control Act defines "misdemeanor crime of domestic violence" as any conviction which "(i) is a misdemeanor under Federal, State, or Tribal law; and  [¶] (ii) has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by . . . a person with whom the victim shares a child in common, [or] by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian."  (18 U.S.C. § 921(a)(33)(A).)

The federal statute also expressly enumerates certain conditions that negate a conviction from qualifying as a predicate conviction of domestic violence.  As relevant here, the statute provides:  "A person shall not be considered to have been convicted of such an offense for purposes of this chapter if the conviction has been expunged or set aside, or is an offense for which the person has been pardoned or has had civil rights restored (if the law of the applicable jurisdiction provides for the loss of civil rights under such an offense) unless the pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms." (18 U.S.C. § 921(a)(33)(B)(ii).)

## 2.     Penal Code Section 242 and the Use of Physical Force

To qualify as a predicate misdemeanor conviction for domestic violence under federal law, the criminal statute under which the individual was convicted must contain as an element "the *use or attempted use of physical force*, or the threatened use of a deadly weapon." (18 U.S.C. § 921(a)(33)(A)(ii), italics added.)[1]  Penal Code section 242 provides that "[a] battery is any willful and unlawful *use of force or violence* upon the person of another." (Italics added.)  The question germane to this appeal is whether the California simple battery statute under which plaintiff was convicted contains the element of "use or attempted use of physical force" as required by the federal statute.  Put another way, is the "use of force" different than the "use or attempted use of physical force"?

Despite the Department's suggestion to the contrary, *Hayes* did not resolve this issue.  The issue before the Supreme Court in *Hayes* was whether the federal definition of "misdemeanor crime of domestic violence" requires the domestic relationship to be an element of the underlying criminal statute upon which the predicate conviction is based.  The Supreme Court held that while it had to be proven, it need not be an element of the underlying statute.  Therefore, conviction under a general battery statute may satisfy to establish the predicate misdemeanor crime of domestic violence, so long as it otherwise meets the federal definition set forth at section 921(a)(33)(A).[2]

Plaintiff argues that, not only did *Hayes* not resolve the issue, but California's battery statute is over inclusive and may be violated by a mere touching, an act that is qualitatively different than the use of "physical force" within the meaning of the federal statute.  Plaintiff therefore contends his misdemeanor battery conviction does not qualify as a predicate conviction for which the federal firearms disability attaches.

---

[1]     There is no dispute here plaintiff's underlying conduct did not involve the use of a deadly weapon.

[2]     It is undisputed that plaintiff's 1994 battery conviction, under Penal Code section 242, involved his then-girlfriend with whom he shared a residence, thus constituting a qualifying domestic relationship.

The United States Supreme Court has yet to construe the phrase "use or attempted use of physical force" in defining a misdemeanor crime of domestic violence. However, it has construed the same phrase, contained in related federal statutes, to require a quantum of force greater than a de minimus use of force or offensive touching. (See *Leocal v. Ashcroft* (2004) 543 U.S. 1 (*Leocal*) & *Johnson v. United States* (2010) 559 U.S. 133 [130 S.Ct. 1265] (*Johnson*).) Furthermore, numerous federal circuits, including the Ninth Circuit, have analyzed statutes similar to Penal Code section 242 and have found that convictions under such penal statutes do not qualify as predicate misdemeanor crimes of domestic violence within the meaning of title 18 of the United States Code section 921(a)(33)(A). As we explain, we therefore conclude that plaintiff's conviction for simple battery under Penal Code section 242 does not qualify as a conviction for a misdemeanor crime of domestic violence within the meaning of the federal statute.

**A.     The Decisions in *Leocal*, *Hayes*, and *Johnson***

Several years before *Hayes*, the United States Supreme Court in *Leocal* construed the phrase "use of physical force" within the context of a related federal statute. There, the Immigration and Naturalization Service (INS) claimed Leocal's 2000 Florida conviction for driving under the influence (DUI) and causing serious bodily injury was a "crime of violence" under title 18 of the United States Code section 16, thereby subjecting him to deportation. (*Leocal*, *supra*, 543 U.S. 1.) A "crime of violence" under this statute includes "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another . . . ." (§ 16(a).)

The United States Supreme Court disagreed with the INS, and found that the phrase "the 'use . . . of physical force against the person or property of another' – most naturally suggests a higher degree of intent than negligent or merely accidental conduct." (*Leocal*, *supra*, 543 U.S. at p. 9.) The Supreme Court thus concluded that Leocal's DUI

offense was not a "crime of violence" within the meaning of under title 18 of the United States Code section 16.[3]

Then, in *Hayes*, the United States Supreme Court was presented with the issue of whether a predicate misdemeanor crime of domestic violence under section 922(g)(9) requires the domestic relationship be an element of the underlying penal statute on which the defendant was convicted. The defendant in *Hayes* was prosecuted for violating section 922(g)(9) based on his possession of multiple firearms despite having been previously convicted of a misdemeanor under a West Virginia battery statute. The United States Supreme Court held that while a domestic relationship must be proved beyond a reasonable doubt in a prosecution under section 922(g)(9), the domestic relationship need not be an express element of the criminal statute on which the predicate conviction is based. (*Hayes*, *supra*, 555 U.S. at pp. 418, 426.) This interpretation of the federal statute had already been the law in the Ninth Circuit since 2003 under *U.S. v. Belless* (9th Cir. 2003) 338 F.3d 1063, 1068 (*Belless*), as well as in eight other federal circuits that had considered the question. *Hayes* was decided to resolve the conflict created by a contrary decision out of the Fourth Circuit. (*Hayes*, *supra*, at p. 420.)

*Hayes*, however, did not construe the phrase "use or attempted use of physical force" in the context of defining a misdemeanor crime of domestic violence. Although the underlying predicate conviction in *Hayes* arose from a battery statute similar to Penal Code section 242, and the indictment alleged that it "has, as an element, the use or attempted use of physical force," whether an offensive touching constituted "the use or attempted use of physical force . . ." within the meaning of title 18 of the United States Code section 921(a)(33)(A)(ii) was not raised or resolved in *Hayes*.[4]

---

**3**      The United States Supreme Court also found revealing that in the 1990 Immigration and Naturalization Act, Congress separately listed DUI-causing-injury from the definition of "crime of violence." (8 U.S.C. § 1101 et seq.)

**4**      Given the procedural posture of the case, it is not surprising the United States Supreme Court did not address the issue. *Hayes* was an appeal of a denial of the defendant's motion to dismiss the indictment. The indictment pled the defendant had been previously convicted of battery, and that West Virginia's battery statute contained, as an element, the use or attempted use of physical force. (*Hayes*, *supra*, 555 U.S. at p.

Subsequent to *Hayes*, the United States Supreme Court in *Johnson* once again addressed the construction of the phrase "use of physical force" in the context of another related federal statute, the Armed Career Criminal Act. The defendant in *Johnson* was prosecuted under title 18 of the United States Code section 924(e)(1), which provides that a person who violates section 922(g) and "who 'has three previous convictions' for 'a violent felony' 'committed on occasions different from one another' shall be imprisoned for a minimum of 15 years and a maximum of life." (*Johnson*, *supra*, 130 S.Ct. at p. 1268.) "Violent felony" under section 924(e)(2)(B) is defined, in relevant part, as "any crime punishable by imprisonment for a term exceeding one year . . . that – [¶] (i) has as an element the use, attempted use, or threatened use of physical force against the person of another."

The issue decided in *Johnson*, was "whether the Florida felony offense of battery by '[a]ctually and intentionally touch[ing]' another person, [citation], 'has as an element the use . . . of physical force against the person of another,' [under title 18 of the United States Code section 924(e)(2)(B)(i)], and thus constitutes a 'violent felony' under the Armed Career Criminal Act [section 924(e)(1)]." (*Johnson*, *supra*, 130 S.Ct. at p. 1268.)

---

419, fn. 2.) The defendant's motion to dismiss argued the indictment was defective because it did not, and could not, plead that a domestic relationship was also an element given the plain language of the West Virginia battery statute. The appeal addressed that purported deficiency in the *allegations* of the indictment. The substantive legal issue of whether the West Virginia battery statute actually required, as had been pled, the "use or attempted use of physical force" in order to sustain a battery conviction was simply not before the *Hayes* court.

The consideration of issues and decision by the United States Supreme Court in any given case is limited to questions formally presented by the petition for review. (See *General Pictures Co. v. Electric Co.* (1938) 304 U.S. 175, 179; accord, *Izumi Seimitsu Kogyo Kabushiki Kaisha v. U.S. Philips Corp.* (1993) 510 U.S. 27, 31-32 ["A question which is merely 'complimentary' or 'related' to the question presented in the petition for certiorari is not '"fairly included therein."'"]; see also U.S. Supreme Ct. Rules, rule 14.1(a) ["Only the questions set out in the petition, or fairly included therein, will be considered by the Court."].) Again, nothing in *Hayes* reflects the court had before it, or considered, the definition of the phrase "use of physical force" as an issue fairly reflected in the issues presented by the petition and upon which review was granted.

11

The United States Supreme Court held "in the context of a statutory definition of 'violent felony,' the phrase 'physical force' means *violent* force--that is, force capable of causing physical pain or injury to another person." (*Johnson*, at p. 1271.)

As such, the Florida felony battery statute, which could be violated merely by someone who "'[a]ctually and intentionally touch[ed]'" another person, was not a violent felony within the meaning of title 18 of the United States Code section 924(e)(2)(B)(i), and thus, was not a predicate offence under section 924(e)(1).[5] (*Johnson*, *supra*, 130 S.Ct. at p. 1268.) The United States Supreme Court in *Johnson*, however, did not interpret the phrase "physical force" in the context of defining a *misdemeanor* crime of domestic violence; the Supreme Court explicitly stated, "[t]he issue is not before us, so we do not decide it." (*Id.* at p. 1273.) Nor does the opinion reference *Hayes* as having already addressed the issue.

## B.     Federal Circuit Decisions

The Ninth Circuit, analyzing a Wyoming battery statute similar to Penal Code section 242, concluded the phrase "physical force" in title 18 of the United States Code section 921(a)(33)(A)(ii) requires conduct of a more serious degree than a mere offensive touching. (*Belless*, *supra*, 338 F.3d 1063.) The Wyoming statute defined the crime of battery as "'unlawfully touch[ing] another in a rude, insolent or angry manner or intentionally, knowingly or recklessly caus[ing] bodily injury to another.'" (*Belless*, at p. 1067.) The Ninth Circuit concluded that the statute embraced conduct which did not amount to the "use of physical force." (*Ibid.*)

In concluding that a conviction under the Wyoming statute did not amount to a "misdemeanor crime of domestic violence" within the meaning of the federal statute, the Ninth Circuit explained the federal statute requires more than a de minimus use of force,

---

**5**     A violation of the Florida felony battery statute at issue "occurs when a person either '1. [a]ctually and intentionally touches or strikes another person against the will of the other,' or '2. [i]ntentionally causes bodily harm to another person.' Because the elements of the offense are disjunctive, the prosecution can prove a battery in one of three ways. [Citation.] It can prove that the defendant '[i]ntentionally caus[ed] bodily harm,' that he [i]ntentionally str[uck]' the victim, or that he merely '[a]ctually and intentionally touche[d]' the victim." (*Johnson*, *supra*, 130 S.Ct. at p. 1269.)

something beyond a rude or impolite touching.  (*Belless*, *supra*, 338 F.3d at p. 1068.)
"More inclusive battery statutes such as Wyoming's may be drafted to embrace conduct
that too often leads to the more serious violence necessary as a predicate for the federal
statute, but they are not limited to it, so cannot supply the necessary predicate."  (*Ibid*.)

The rationale of *Belless* has been followed in several other federal circuits.  (See
*United States v. Castleman* (6th Cir. 2012) 695 F.3d 582, 586 (*Castleman*) [affirming
dismissal of indictment under 18 U.S.C. § 922(g)(9) where underlying state assault
conviction did not require degree of force necessary to meet "physical force" requirement
of federal statute]; *United States v. White* (4th Cir. 2010) 606 F.3d 144, 153 (*White*)
[reversing conviction under 18 U.S.C. § 922(g)(9) where Virginia battery statute could be
violated by mere touching and therefore did not qualify as use of physical force within
meaning of federal statute]; *U.S. v. Howell* (8th Cir. 2008) 531 F.3d 621, 623-624
[reversing denial of defendant's motion to dismiss where Missouri statute did not require
"use of physical force" within meaning of federal statute]; *U.S. v. Hays* (10th Cir. 2008)
526 F.3d 674, 679 [same, discussing Wyoming battery statute].)  The Ninth Circuit also
recently reaffirmed the rationale of *Belless* in *Ortega-Mendez v. Gonzales* (9th Cir. 2006)
450 F.3d 1010, 1018-1020 (*Ortega-Mendez*), which found that a battery conviction under
Penal Code section 242 did not constitute a "crime of domestic violence" within the
meaning of title 8 of the United States Code section 1227 identifying grounds for
deporting aliens from the United States.[6]

*White* and *Castleman* persuasively rely upon the United States Supreme Court
decision in *Johnson.*  The Fourth Circuit explained:  "We see little, if any, distinction
between the 'physical force' element in a 'crime of *violence*' in § 16 under *Leocal*, a
'*violent* felony' under § 924(e) in *Johnson* and a 'misdemeanor crime of domestic
*violence*' in § 922(g)(9) in the case at bar.  All these statutes describe an act of 'violence'
and require the identical element of that violent act to include 'physical force.'  A 'crime

---

[6]    Other circuits have held the opposite, discussing similar statutes.  (See, e.g., *U.S.
v. Griffith* (11th Cir. 2006) 455 F.3d 1339; *U.S. v. Kavoukian* (2d Cir. 2002) 315 F.3d
139; *U.S. v. Nason* (1st Cir. 2001) 269 F.3d 10 & *U.S. v. Smith* (8th Cir. 1999) 171 F.3d
617.)

13

of violence' is a 'violent, active crime' and a 'violent felony' requires 'violent force.' We see no principled basis upon which to say a 'crime of domestic *violence'* would include *nonviolent* force such as offensive touching in a common law battery." (*White*, *supra*, 606 F.3d at p. 153.)

*Castleman* states: "Congress adopted §§ 921(a)(33)(A)(ii) and 922(g)(9) over a decade after it codified the 'use of physical force' provisions in §§ 16(a) and 924(e)(2)(B)(i), and, as we explained above, Congress used nearly identical language. *See* Pub. L. No. 104-208, § 101(f), 110 Stat. 3009-369, 3009-372 (1996); Pub. L. No. 99-308, § 102, 100 Stat. 451 (1986); Pub. L. No. 98-473, § 1001(a), 98 Stat. 2136 (1984). We consider a statute with language modeled on that of an earlier statute to function as a legislative interpretation of the statute in question, and give the earlier statute 'great weight in resolving any ambiguities and doubts' in the later one." (*Castleman*, *supra*, 695 F.3d at p. 586.)

*Johnson* explains that the definition of "use of physical force" in a federal statute is a question of federal law, but federal courts are bound by state law concerning the meaning and scope of the elements of state criminal statutes. (See *Johnson*, *supra*, 130 S.Ct. at p. 1269.) Under California law, the definition of battery requires the use of "force or violence," a disjunctive, indicating nonviolent force suffices. The statute has been described as having "the special legal meaning of a harmful or offensive touching. [Citation.] ""It has long been established, both in tort and criminal law, that "the least touching" may constitute battery.'"" [Citations.]" (*People v. Page* (2004) 123 Cal.App.4th 1466, 1474, fn. 1; see also *People v. Pinholster* (1992) 1 Cal.4th 865, 961; *People v. Martinez* (1970) 3 Cal.App.3d 886, 889 ["Any harmful or offensive touching constitutes an unlawful use of force or violence."]; CALCRIM No. 960.)

*Johnson* was also faced with an "over inclusive" statute, similar to Penal Code section 242, that could be violated in more than one way such that the court could only conclude the conviction rested upon the "least" of violative acts. (*Johnson*, *supra*, 130 S.Ct. at p. 1269.) The same logic requires a finding here that plaintiff's battery

14

conviction was based only on a mere touching, which would not amount to a use of "physical force" within the meaning of the federal firearms statute.[7]

Finally, the fact the federal statutory language includes the "attempted use" of physical force does not dictate a different construction; the degree of force necessary to constitute "physical force" remains the same, whether or not contact is made with the victim. Therefore, for an *attempt* to fall within the federal definition, the force must be something more than an offensive touching or de minimus force. The federal statute is not properly read to include a conviction for conduct where de minimus or no force at all was used or attempted.[8]

**3. Postconviction Relief Granted to Plaintiff**

It is undisputed that, under California law, plaintiff's battery conviction has been set aside and the criminal complaint against plaintiff dismissed pursuant to Penal Code section 1203.4. It is also undisputed that plaintiff obtained an order granting him relief from the state firearms disability related to his battery conviction under former

---

[7] The concern raised in *Hayes* that a significant number of states either do not have or fail to utilize domestic violence statutes does not apply to California. In fact, here, plaintiff was prosecuted under Penal Code section 273.5, one of California's domestic violence statutes. Plaintiff was acquitted of this charge, as well as the lesser included offense of battery on an individual in a dating relationship (§ 243, subd. (e)). We can thus conclude the victim in the underlying battery did not sustain a traumatic condition as defined in section 273.5.

Regardless, we need not, and do not address whether a conviction under Penal Code section 242 may qualify, in appropriate circumstances, as a predicate misdemeanor crime of domestic violence where, under the modified categorical approach discussed in *Johnson*, the record of conviction establishes that the requisite degree of physical force formed the basis for the conviction. (See *Johnson*, *supra*, 130 S.Ct. at p. 1273; *Ortega-Mendez*, *supra*, 450 F.3d at pp. 1020-1021.) Nothing in the record here supports a finding that plaintiff's conviction under section 242 was based on conduct greater than a mere offensive touching.

[8] Given our holding, we do not address the anomaly that would result if a defendant, tried and acquitted of a misdemeanor crime of domestic violence but convicted of a lesser, nondomestic violence offense, were nevertheless subject to the Gun Control Act as a person convicted of "a misdemeanor crime of domestic violence."

15

section 12021 (now § 29805).  Moreover, even without this 1994 court order, the state firearm disability expired by operation of law as of June 2004, since the state firearms disability for an individual convicted of a misdemeanor battery is of a limited 10-year duration from the date of conviction.  Finally, it is undisputed that the California Department of Justice Bureau of Firearms provided plaintiff, in June 2009, with notice of his eligibility to possess and purchase firearms.

Plaintiff argues these orders satisfy the expungement requirement defined in title 18 of the United States Code section 921(a)(33)(B)(ii) such that the federal firearm disability does not apply to him.  The Department contends none of these state law orders qualify under federal law as a true expungement and therefore, the lifetime federal firearm disability applies.

Our research disclosed no case addressing whether a Penal Code section 1203.4 expungement, coupled with a Penal Code section 12021 (now Pen. Code, § 29805) order restoring a defendant's right to possess a firearm, together satisfy the expungement requirement defined in title 18 of the United States Code section 921(a)(33)(B)(ii).  Nonetheless, in light of our disposition above, we need not reach plaintiff's additional argument that he obtained a qualifying expungement of his conviction under state law.

## DISPOSITION

The judgment is reversed and remanded to the trial court.  The trial court is directed to vacate its order denying plaintiff's petition, and to enter a new order granting his petition for a writ of mandate, and issuing a writ of administrative mandate returning the matter to the Commission to vacate its decision of October 20, 2010, and to conduct further proceedings consistent with this opinion.  Plaintiff shall recover his costs on appeal.

KARLAN, J.[*]

I concur:

FLIER, Acting P. J.

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

16

**GRIMES, J. – Dissenting**

The context in which we are called upon to independently review whether plaintiff may seek reinstatement as a deputy sheriff after the United States Supreme Court issued its opinion in *United States v. Hayes* (2009) 555 U.S. 415 (*Hayes*) necessarily informs my analysis. This court does not bring our independent judgment to bear on the interpretation of *Hayes* in a contextual bell jar or in the intellectual ether. The issue before us arose in the real world context of county counsel having to analyze the effect of *Hayes* on county employees whose duties require them to bear arms, and to advise whether *Hayes* required the Los Angeles County Sheriff's Department (Department) to discharge any deputy who has been convicted of an assault or battery upon a domestic victim.[1]

In analyzing the effect of *Hayes*, county counsel must have known that if they concluded *Hayes* required discharge, the county might suffer the loss of one or more valuable deputies (and perhaps other county employees), and might incur the costs of defending the discharge in civil service commission proceedings or in court. On the other hand, could county counsel prudently advise that, based on questions raised in conflicting federal circuit court opinions about the reach of the Gun Control Act of 1968, title 18 United States Code section 921 et seq.,[2] or based on subtle distinctions between California's battery law and other states' battery laws, the county had no realistic risk of liability in a civil rights or other lawsuit, an audit, or other state or federal governmental

---

[1]  "[T]he test of the quality of an opinion is the light it casts, outside the four corners of the particular lawsuit, in guiding the judgment of the hundreds of thousands of lawyers and government officials who have to deal at first hand with the problems of everyday life and of the thousands of judges who have to handle the great mass of the litigation which ultimately develops." (Hart, *Foreward: The Time Chart of the Justices* (1959) 73 Harv. L.Rev. 84, 96.)

[2]  All further undesignated section references are to title 18 United States Code unless specified otherwise.

1

or citizens' oversight action if the county were to ignore the lifetime firearms ban on law enforcement officers convicted of misdemeanor battery on a domestic victim?

After considering all the issues discussed in the majority opinion, I am not persuaded that *Hayes* permits the Department to lawfully employ Deputy Shirey. I find nothing in the letter or spirit of *Hayes* to suggest a person convicted of misdemeanor battery on a domestic victim may continue to possess guns, on the basis of the distinctions drawn by the majority. In my exercise of independent judgment, I would affirm, finding the trial court correctly concluded the United States Supreme Court opinion in *Hayes* established that plaintiff's battery conviction qualifies as a "misdemeanor crime of domestic violence" under the Gun Control Act, plaintiff failed to obtain an expungement of the conviction within the meaning of federal law, and the Department did not abuse its discretion in determining the federal gun possession ban applied to plaintiff.

Plaintiff seeks reinstatement on two bases: (1) a battery conviction under Penal Code section 242 does not constitute a misdemeanor crime of domestic violence under the Gun Control Act because a conviction under Penal Code section 242 does not require the use of "physical force" within the meaning of the federal statute; and (2) plaintiff obtained a qualifying expungement under federal law. The majority agrees with plaintiff that a conviction under Penal Code section 242 does not qualify as a predicate misdemeanor crime of domestic violence under the federal Gun Control Act. The majority concludes therefore the federal firearms prohibition does not apply to plaintiff, and the Department's discharge decision, based solely on that premise, must be set aside.

The Gun Control Act prohibits certain individuals, including those who have been convicted of a felony, from possessing firearms on several enumerated bases. (*Hayes*, *supra*, 555 U.S. at p. 418.) The Lautenberg Amendment (Pub.L. No. 104-208 (Sept. 30, 1996) 110 Stat. 3009) extended the federal firearms prohibition to include individuals convicted of "'a misdemeanor crime of domestic violence.'" (*Hayes*, at p. 418; see also § 922(g)(9).)

The federal statute, in relevant part, defines "misdemeanor crime of domestic violence" as any conviction which "(i) is a misdemeanor under Federal, State, or Tribal law; and  [¶]  (ii) has, as an element, *the use or attempted use of physical force*, or the threatened use of a deadly weapon[.]" (§ 921(a)(33)(A), italics added.)  Penal Code section 242 contains language substantially similar to the federal definition:  "A battery is any willful and unlawful *use of force or violence* upon the person of another."  (Pen. Code, § 242, italics added.)

While the *Hayes* court was not squarely presented with the question of defining the phrase "use of physical force" in the Gun Control Act, nothing in the *Hayes* opinion suggests the court was of the view that a "misdemeanor crime of domestic violence" was intended to cover only convictions based on violent acts.  Indeed, the opinion reads to the contrary.

The defendant in *Hayes* was prosecuted for violating the federal firearms prohibition at section 922(g)(9).  (*Hayes*, *supra*, 555 U.S. at pp. 418-419.)  He had been convicted of battering his then-wife under a generic West Virginia battery statute with a broad scope similar to that of Penal Code section 242.  The West Virginia statute provided:  "'[A]ny person [who] unlawfully and intentionally makes physical contact of an insulting or provoking nature with the person of another or unlawfully and intentionally causes physical harm to another person, . . . shall be guilty of a misdemeanor.'"  (*Hayes*, at p. 419, fn. 1.)

The specific question before the *Hayes* court was whether the domestic relationship had to be an element of the underlying penal statute on which the predicate conviction was based.  *Hayes* held that while a domestic relationship must be proved beyond a reasonable doubt in a prosecution under section 922(g)(9), the domestic relationship need not be an express element of the underlying statute.  (*Hayes*, *supra*, 555 U.S. at pp. 418, 426.)  None of the language of the *Hayes* opinion remotely hints that a conviction under the broad West Virginia statute, one which could be violated without the use of violent force, did not satisfy the federal definition of a "misdemeanor crime of domestic violence."

Elucidating on its rationale that a conviction under a generic battery statute suffices to establish a predicate "misdemeanor crime of domestic violence," the *Hayes* court stated: "[I]t seems to us 'most natural'—to read § 921(a)(33)(A) to convey that a person convicted of battering a spouse or other domestic victim has committed a 'crime of domestic violence[.]'" (*Hayes*, *supra*, 555 U.S. at p. 426, fn. 7.) And, although the definition of the phrase "use of physical force" in section 921(a)(33)(A) was not the issue to be resolved by the *Hayes* court, I do not conclude as a consequence that it may have escaped the attention of the Justices that a person could be convicted of battering a domestic victim in West Virginia without the use of violent force.

*Hayes* also relied on the legislative history behind the Lautenberg Amendment. (*Hayes*, *supra*, 555 U.S. at pp. 426-428.) Specifically, *Hayes* noted the statutory definition of a "misdemeanor crime of domestic violence" was amended to *delete* the phrase "crime of violence" and replaced with the definition requiring only the use or attempted use of physical force. (*Id*. at p. 428.) *Hayes* explained the "manifest purpose" behind the Lautenberg Amendment was to "'close [a] dangerous loophole'" (*Hayes*, at pp. 426-427) allowing domestic abusers convicted under generic statutes or convicted only of misdemeanors from falling outside of the federal firearms prohibition. The legislative history and purpose behind the amendment do not support the majority's conclusion that a misdemeanor crime of domestic violence must involve violent conduct to fall within the firearms ban of the Gun Control Act. (See, e.g., *U.S. v. Daas* (1999) 198 F.3d 1167, 1174 [where statute is ambiguous "courts may look to its legislative history for evidence of congressional intent"].)

Further, the federal definition includes the language "attempted use of physical force." Since a conviction for a mere *attempted* use of physical force qualifies as a misdemeanor crime of domestic violence under the federal statute, whereas plaintiff here was convicted under a statute requiring an actual use of force, I disagree that a "misdemeanor crime of domestic violence" is properly construed as requiring violent conduct.

4

The majority relies heavily on *Johnson v. United States* (2010) 559 U.S. 133 [130 S.Ct. 1265] (*Johnson*). But *Johnson* concerned the interpretation of the phrase "use or attempted use of physical force" as used in a separate federal statute: the Armed Career Criminal Act. (See § 924(e).) More specifically, the *Johnson* court stressed that it was construing Congress's use of that phrase *within the context* of defining a "violent felony." (130 S.Ct. at pp. 1271-1272.)

The *Johnson* court expressly declined to state the same construction should be imparted to the phrase used in other federal statutes such as the Gun Control Act. "We have interpreted the phrase 'physical force' only in the context of a statutory definition of 'violent felony.' We do not decide that the phrase has the same meaning in the context of defining a *misdemeanor* crime of domestic violence. The issue is not before us, so we do not decide it." (*Johnson*, *supra*, 130 S.Ct. at p. 1273.) This language in *Johnson* makes clear the Supreme Court finds it is more important to discern the congressional intent of each particular federal statute than to establish a uniform federal definition of the phrase "physical force." And, recall, the *Hayes* court rested its holding in part on the congressional intent to extend the gun possession ban to all those convicted of assault or battery on a domestic victim because of the "potentially deadly combination" of guns and domestic strife. (*Hayes*, *supra*, 555 U.S. at pp. 426-428.)

Simply because Congress used the phrase "physical force" in a number of related federal statutes does not evince a clear intent to embue the phrase with the same meaning in each of those separate statutory schemes. The phrase must be read in the context of the overall statutory scheme of which it is a part so as to not lead to absurd results. In construing a federal statute, "'we look first to the plain language of the statute, construing the provisions of the entire law, including its object and policy, to ascertain the intent of Congress.' [Citation.]" (*U.S. v. Mohrbacher* (9th Cir. 1999) 182 F.3d 1041, 1048; accord, *U.S. v. Daas*, *supra*, 198 F.3d at p. 1174 ["To determine the plain meaning of a particular statutory provision, and thus congressional intent, the court looks to the entire statutory scheme."].)

5

In the Gun Control Act, the phrase "use or attempted use of physical force" is used in the context of defining a *misdemeanor*. (§ 921(a)(33)(A).) In the context of a misdemeanor crime of domestic violence, construing "physical force" as requiring a heightened or violent level of physical force, and thus precluding conviction for battery of a domestic victim under a general battery statute like Penal Code section 242 from qualifying as a predicate conviction, is an absurd result. "We interpret a statute 'to avoid untenable distinctions and unreasonable results whenever possible.' [Citations.]" (*Mester Mfg. Co. v. INS* (9th Cir. 1989) 879 F.2d 561, 567; see also *U.S. v. Daas*, *supra*, 198 F.3d at p. 1174.)

As *Hayes* explained, domestic abusers are often prosecuted under general assault or battery statutes, and Congress could not have intended to preclude individuals who suffer convictions under those types of statutes from being brought within the ambit of the federal firearms prohibition. (*Hayes*, *supra*, 555 U.S. at pp. 426-428.) Plaintiff's battery conviction under Penal Code section 242 qualifies as a predicate "misdemeanor conviction of domestic violence" within the meaning of section 922(g)(9). (See also *People v. Delacy* (2011) 192 Cal.App.4th 1481, 1492 [disagreeing with characterization of a Pen. Code, § 242 battery as a nonviolent offense, in rejecting constitutional challenge to imposition of state firearms ban based on a § 242 conviction].)

Moreover, plaintiff has failed to show he obtained a qualifying expungement within the meaning of the federal statute. Because the majority agreed with plaintiff's first contention, they did not reach this second argument. The Gun Control Act expressly provides that a person shall not be considered to have suffered a conviction for a misdemeanor crime of domestic violence "if the conviction has been expunged or set aside, or is an offense for which the person has been pardoned or has had civil rights restored (if the law of the applicable jurisdiction provides for the loss of civil rights under such an offense) unless the pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms." (§ 921(a)(33)(B)(ii).)

It is undisputed that, under California law, plaintiff's battery conviction has been set aside and the criminal complaint against plaintiff dismissed pursuant to Penal Code section 1203.4; that the court granted plaintiff relief from the state firearms prohibition related to his battery conviction under former section 12021 (now § 29805); and that the California Department of Justice, Bureau of Firearms issued plaintiff a firearms eligibility notification. However, plaintiff has not shown that this relief, obtained under state law, satisfies the Gun Control Act's requirement for a qualifying expungement under federal law.

From the plain language of the statute, Penal Code section 1203.4 is not an expungement statute, as it does not render the prior conviction a legal nullity for all purposes. (See *People v. Frawley* (2000) 82 Cal.App.4th 784, 791.) It contains "numerous and substantial" limitations on the nature of relief afforded, including that any conviction set aside may be used in a subsequent prosecution of the individual. (*Ibid*.)

In relevant part, Penal Code section 1203.4, subdivision (a)(1) provides: "In any case in which a defendant has fulfilled the conditions of probation for the entire period of probation, . . . the defendant shall, at any time after the termination of the period of probation, if he or she is not then serving a sentence for any offense, on probation for any offense, or charged with the commission of any offense, be permitted by the court to withdraw his or her plea of guilty or plea of nolo contendere and enter a plea of not guilty; or, if he or she has been convicted after a plea of not guilty, the court shall set aside the verdict of guilty; and, in either case, the court shall thereupon dismiss the accusations or information against the defendant and except as noted below, he or she shall thereafter be released from all penalties and disabilities resulting from the offense of which he or she has been convicted[.] . . . However, in any subsequent prosecution of the defendant for any other offense, the prior conviction may be pleaded and proved and shall have the same effect as if probation had not been granted or the accusation or information dismissed. The order shall state, and the probationer shall be informed, that the order does not relieve him or her of the obligation to disclose the conviction in response to any direct question contained in any questionnaire or application for public

7

office, for licensure by any state or local agency, or for contracting with the California State Lottery Commission."

The statute was amended to include express language stating that relief granted pursuant thereto did not permit firearm possession. "Dismissal of an accusation or information pursuant to this section does not permit a person to own, possess, or have in his or her custody or control any firearm or prevent his or her conviction under Chapter 2 (commencing with Section 29800)[3] of Division 9 of Title 4 of Part 6." (Pen. Code, § 1203.4, subd. (a)(2).) Thus, Penal Code section 1203.4 does not obliterate or annul a conviction. (See Black's Law Dict. (9th ed. 2009) p. 662, col. 2 ["expunge" means "[t]o erase or destroy"]; see also *People v. Field* (1995) 31 Cal.App.4th 1778, 1786 [expungement results in the """"eradication of a record of conviction . . . . It is not simply the lifting of disabilities . . . . It is rather a redefinition of status, a process of erasing the legal event of conviction or adjudication and thereby restoring to the regenerative offender his *status quo ante*""""].)

Because of these unequivocal limitations on the relief afforded by Penal Code section 1203.4, federal courts have held that a set aside order and dismissal of a complaint pursuant to section 1203.4, like the relief obtained by plaintiff, does *not* completely obliterate or remove the effects of the conviction for purposes of the federal firearm prohibition. (See *United States v. Andrino* (9th Cir. 1974) 497 F.2d 1103; *Jennings v. Mukasey* (9th Cir. 2007) 511 F.3d 894.)

With regard to a convicted individual's right to possess firearms, "the Federal Government has an interest in a single, national, protective policy, broader than required by state law." (*Caron v. United States* (1998) 524 U.S. 308, 316.) By enacting section 922(g)(9), Congress acted within its authority to impose a lifetime firearms ban for individuals convicted of misdemeanor crimes of domestic violence, except in the event of a pardon, expungement or qualifying restoration of civil rights. Plaintiff has not

---

**3**     Penal Code former section 12021.

8

demonstrated that the state law relief he obtained falls within any of the limited exceptions to the federal ban on possessing a firearm. That plaintiff is permitted to possess a firearm under California law does not supersede the prohibition under federal law.

Because plaintiff has failed to show he is not subject to the federal firearms prohibition, I would affirm the trial court's denial of his writ petition. One may debate whether the rule we must follow is fair as applied to Deputy Shirey. However, I do not perceive a trend in federal law to construe *Hayes* so as to relax restrictions on gun possession; quite the opposite. The majority opinion has the potential to misguide the judgment of the many lawyers and government officials who have to deal first hand with the Gun Control Act, and the judges who have to handle the litigation which may ultimately develop.


GRIMES, J.


9